THE OTTAWA UNIVERSITY v. THE BOARD OF COMMISSIONERS OF FRANKLIN COUNTY.

UNIVERSITY LANDS — *Exemption from Taxation.* No part of the section of Indian lands granted by Congress to the Ottawa University, and upon which the university is located, is exempt from taxation, except that which remains and is used as a site for the university.

*Error from Franklin District Court.*

THIS was an appeal from an order of the board of county commissioners of Franklin county relating to the assessment and taxation of certain real estate of the Ottawa University. Prior to 1887, a portion of the land which had been granted to the Ottawa University was platted as an addition to the city of Ottawa, and some of the lots which were unsold were in 1887 placed on the tax-roll by the assessor of the city of Ottawa. In March, 1888, the president of the university filed with the county board a petition asking that the taxes be remitted from all lands in the university addition. The county board denied the petition, and ordered that all the lands be placed upon the tax-roll for assessment and taxation, except

10 acres on which the college building was situated.   From this order an appeal was taken to the district court, where a hearing was had in January, 1889.   The following findings of fact and conclusions of law were made by the court:

"By the terms of the treaty of 1862 with the Ottawa Indians, (12 Stat. at Large, p. 1237,) certain lands of the Ottawas were set apart for a school.   By the subsequent treaty of 1867, (15 Stat. at Large, p. 517,) certain provisions were made for 'Ottawa University,' that institution having been duly incorporated as a college under the laws of Kansas, and located upon the lands set apart for school purposes by the former treaty, and recognized as the beneficiary thereunder. By an act of congress for the relief of certain Indians in the central superintendency, approved June 10, 1872, and a later act, approved March 3, 1873, said lands were sold, and the proceeds applied to the benefit of said tribe, and for other purposes named, except 640 acres, which were patented in fee-simple to the university, under date of January 24, 1884. This tract comprises part of several different sections, but forms one compact body south of and adjoining the city of Ottawa, on which stand the university buildings.

"The act of congress providing for the issuance of the patent (ch. 319, 17 St., p. 625, approved March 3, 1873) contains this provision: 'Provided, however, That the section on which the university stands, or any part of it which may remain as a site for an institution for learning, shall remain free from taxation until the legislature of Kansas shall otherwise order.'   At the time this act of congress was passed, the said 640 acres had been occupied as a site for the school and for general farming purposes, and had been so occupied and used for about eight years.   The school was located near the northern boundary of the land, fronting upon a street of the city.   The land, except a small field about the building, was devoted to pasturage for hire, to the growing of nursery stock, and to general farming purposes, rented at different times to various persons, and managed by the board of trustees.   The rents and profits from the land have been appropriated to the expenses of the institution, and for improvements and repairs.

"On the 2d day of March, 1885, a tract of 160 acres, including a *campus* of $32\frac{96}{100}$ acres, on which the buildings stand, was laid off, platted and recorded by the plaintiff as a townsite, the streets of the city being extended through it, and lots and blocks designated thereon uniform with the plan of the

original town of Ottawa. This plat was named 'University addition to Ottawa,' and numerous lots have been sold and many buildings erected in such addition, and it is now a part of the city of Ottawa. It is in this addition that the lots are situated on which the taxes are asked to be remitted. No part of said lands is now used exclusively for educational purposes, or as a site for said institution, except the *campus* of $32\frac{96}{100}$ acres, and that is used as such grounds usually are, for the convenience, health and recreation of pupils, professors and others connected with the school.

"The exemption from taxation contained in the act of congress, above quoted, applies only to that which 'shall remain as a site of an institution of learning.' The claim that this whole farm, carried on and leased for general agricultural purposes, for profit, and this town-site put upon the market for sale, and already largely occupied and improved, with numerous streets intersecting it, is a part of the site of the college, seems wholly untenable, and must be rejected. Statutes exempting property from taxation are strictly construed, to the end that public burdens shall be equalized. (Hilliard on Taxation, 74, 75.) It should also be observed that by a new act, to provide for assessment and taxation, the legislature has, since the act of congress was passed, declared what property shall be assessed, and it is contended that the legislature has thus 'otherwise ordered,' but I do not now decide that proposition. Under the constitution of the state, property must be actually used for the religious, educational or scientific purposes named, in order to fall within the exemption. Our supreme court long ago put a strict construction upon the language, by holding that when lands belonging to a college were cultivated and leased for the support of the school the use was indirect and not exclusive, and that the exemption did not attach. (*St. Mary's College v. Crowl*, 10 Kas. 442.) So, also, a house used as a residence for a pastor was held not to be used exclusively for religious purposes, and so not exempt from taxation. (*Vail v. Beach*, 10 Kas. 214; see also *Washburn College Case*, 8 id. 344.)

"It is also claimed in the petition that this property is exempt because the proceeds, under the act of congress, are set apart exclusively as an endowment fund, and that, by the statutes of this state (§ 3, chapter 107, 4th subdivision) such endowment fund is exempt. In other words, because this land may be converted into exempt property, it is already exempt. It will be time enough to claim this exemption when

it is converted as intended. All property not expressly exempt must be taxed. (Gen. Stat., ch. 107, § 1.)

"In the Washburn college case, the court said 'an intention to occupy is not equivalent to occupation,' and so here, an intention to sell is not a sale. Besides, when the sale takes place the land will still be taxable; only the proceeds will be exempt. The constitution, however, exempts from taxation all property used exclusively for educational purposes. The legislature has undertaken to limit this to five acres. (Gen. Stat. ch. 107, § 3.) Now it is the use that determines the exemption, (see *St. Marys College Case,* 10 Kas. 442,) and if so exclusively used, the constitution gives complete immunity from taxation, whatever may be the quantity. This is expressly so decided in the case last referred to. In that case a tract of 320 acres was inclosed and used as a farm, and for teaching Indians agriculture, and the court said: 'We suppose it will be conceded that, if the property was used exclusively for the purpose of teaching the Indians agriculture, it would be exempt.' The statute then in force attempted to limit the exemption to 40 acres, instead of five, as at present; but the principle is the same; and it seems quite clear that when the use is exclusive and actual, the law-making power cannot limit the quantity without violating the constitution. As it appears in this case that the *campus* of $32\frac{96}{100}$ acres is actually used exclusively for educational purposes, and the quantity does not seem unreasonable, the order of the commissioners should be so modified as to exempt the *campus* as designated on the plat. In all other respects the order appealed from will be affirmed."

Upon these findings and conclusions, the court entered judgment modifying the order of the board of county commissioners so as to exempt from taxation that portion of the real estate of the Ottawa University which had been designated as a college *campus*, containing $32\frac{96}{100}$ acres, and also adjudging that all other real estate shall be placed on the tax-roll for assessment and taxation. The *Ottawa University* complains of this judgment.

*W. Littlefield,* for plaintiff in error.

*F. A. Waddle,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The findings of fact and the reasoning and conclusions of the district court are convincing, and satisfy us that a correct result was reached. Under our statutes, all property in the state, real and personal, not expressly exempt therefrom, is subject to taxation; and any person claiming immunity from the common burdens of taxation, which should rest equally upon all, must bring himself clearly within the exemption; and hence it is held that a provision creating an exemption should be strictly construed. (*Comm'rs of Miami Co. v. Brackenridge*, 12 Kas. 114; *Washburn College v. Comm'rs of Shawnee Co.*, 8 id. 344.)

It is not contended here that the land and lots of the Ottawa University are exempt under the constitution and laws of the state; but it is claimed that they are exempt under the terms of the act of congress. It provided "that the section on which the Ottawa University stands, or any part of it which may remain as the site of an institution of learning, shall remain free from taxation until the legislature of Kansas shall otherwise order." The right to the exemption depends upon the interpretation which should be placed on this provision. It will be observed that the words "section" and "site" are both used in the provision, and it is obvious that they are not synonymous terms. Congress evidently contemplated that the whole section on which the university was located would not always be retained as a site for the university, and therefore provided, not that the whole section should be exempt, but that only such "part of it" as remained a site for the university should be exempt from taxation. If it had been intended that the whole section should be exempt from taxation, no necessity would have existed for the distinctions that were made between the words "section" and "site," and there would have been no necessity for providing that such part of the section as was set apart and remained as a site should be exempt from taxation. If it had been the purpose to provide for an ex-

emption of the whole 640 acres, congress probably would have said so in plain terms, by enacting "that the section on which the Ottawa University stands . . . shall remain free from taxation until the legislature of Kansas shall otherwise order." Instead of making a plain declaration of this kind, and for the evident purpose of limiting the exemption, it was provided that only so much of the section as should be used as a site for the university should be so exempt. The trial court has found upon sufficient evidence that no part of the section "remains as the site" of the university, except the *campus* of $32\frac{96}{100}$ acres. This determines the extent of the exemption until such time as "the legislature of Kansas shall otherwise order."

Judgment affirmed.

All the Justices concurring.