D. A. STAHL, *as Treasurer of Lyon County, et al.*, v. THE KANSAS EDUCATIONAL ASSOCIATION OF THE METHODIST EPISCOPAL CHURCH.

1. TAXATION—*Exemption.* Any person or corporation claiming immunity from the common burdens of taxation, which should rest equally upon all, must bring himself or itself clearly within the exemption; and hence a provision creating an exemption from taxes must be construed strictly.

2. RELIGIOUS PURPOSES—*Dwelling House, not Exempt from Taxation.* The charter granted by the legislative assembly of the territory of of Kansas to the Kansas Educational Association of the Methodist Episcopal Church provided, "that all the property or funds, real, personal, or mixed, that may be received, held or appropriated by or for said association, for the exclusive purpose of religion or education, including a cemetery not exceeding 40 acres, shall be forever exempt from taxation." *Held,* That a dwelling house owned by the association, which was devised to it for the exclusive purpose of education, is not exempt from taxation, under the provisions of the charter of the association, if not used exclusively for religious or educational purposes, although the house is rented to a tenant, who pays rent therefor, and such rent is appropriated by the association exclusively for the purpose of education.

*Error from Lyon District Court.*

THIS was an action brought by *The Kansas Educational Association of the Methodist Episcopal Church* against *D. A. Stahl,* as county treasurer, and others, to restrain the collection of certain taxes on certain premises in Lyon county, on the ground that the lands were exempt from taxation, under the charter of the Kansas Educational Association, § 6 of which reads as follows:

"That all the property or funds, real, personal, or mixed, that may be received, held or appropriated by or for said association, for the exclusive purposes of religion or education, including a cemetery not exceeding 40 acres, shall be forever exempt from taxation."

The charter was granted February 3, 1858, by a special act of the legislative assembly of the territory of Kansas. The

title of the act is as follows: "An act incorporating the Kansas Educational Association of the Methodist Episcopal Church." Section 2 reads:

"That the objects of the association are and shall be, the promotion of education in Kansas, under the patronage of the Kansas and Nebraska conference of the Methodist Episcopal church, or such conferences as may be hereafter formed out of the said conference, within the bounds of the territory of Kansas, and for the mutual benefit of the members of this association."

Section 7 reads:

"That in case said corporation shall hereafter, at any time, receive by gift, grant, or devise, any number of acres of land exceeding one township of land, they shall be and are hereby required to sell and dispose of the same, within 25 years from the date of such gift, grant, or devise, and said corporation are hereby expressly limited to the holding, at any one time, of more than one township of land, except when received by gift, grant, or devise, as aforesaid, in which case they shall dispose of the same within the time aforesaid."

The defendants filed a general demurrer to the petition, which, on the 4th of February, 1891, was overruled. No application being made by the defendants to answer, the court rendered judgment in favor of the plaintiff against the defendants, forever enjoining them from levying or collecting any general taxes upon or against the real estate described in plaintiff's petition, so long as the same belonged to the plaintiff. The defendants excepted, and bring the case here.

*John T. Little*, attorney general, for plaintiffs in error:

It is a settled rule that no presumption in favor of exemption of property from taxation can be indulged. It must be made upon a sufficient consideration, and be clearly shown to exist. Every reasonable doubt shall be resolved against it. Where it exists, it is to be rigidly scrutinized, and never be permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require. It is in deroga-

tion of public right and narrows the trust created for the good of all. See *Tucker v. Ferguson*, 22 Wall. 575.

The defendant in error claims that the exemption constituted by the act creating its charter is perpetual, and that the act itself is in effect a contract. This concession of the legislature was spontaneous, and no service or duty or other remunerative condition was imposed upon the corporation. It belongs to the class of laws denominated *privilegia favorabilia*. It exists *bene placitum*, and may be revoked at the pleasure of the sovereign. *The Rector v. The County of Philadelphia*, 24 How. 302, 303. All questions of doubt are to be resolved in favor of the state in such cases. *Railroad Co. v. Canal Comm'rs*, 21 Pa. St. 22; *Manufacturing Co. v. East Saginaw*, 19 Mich. 259; *Railroad Co. v. Richmond*, 26 Gratt. 83. See, also, *Krutz v. Town Co.*, 20 Kas. 397; *Scanlon v. Crashaw*, 5 Mo. App. 337.

*W. C. Simpson*, county attorney, for plaintiffs in error:

Plaintiffs in error claim that said petition does not state facts sufficient to constitute a cause of action against the plaintiffs in error: *First*, Because said premises are claimed for Baker University, and it does not appear that Baker University was located at the town of Palmyra, Kas., or within one mile thereof, as required by said charter. *Second*, That the language of said § 6 of said charter, under which the exemption is claimed, does not cover the property in controversy, which the petition shows to be rented to a tenant, and so is not held or appropriated exclusively for the purposes of religion or education. *St. Mary's College v. Crowl*, 10 Kas. 442; *Cincinnati College v. The State*, 19 Ohio, 110. *Third*, Because said § 6 of said charter is inconsistent with and repugnant to § 1, article 11, of the state constitution, which requires that "The legislature shall provide for a uniform and equal rate of assessment and taxation," and was therefore repealed by the adoption of the constitution.

The accumulation of large amounts of untaxed property by educational, charitable, religious and other institutions is

contrary to the fundamental rule requiring an equal rate of assessment and taxation. *The State, ex rel., v. Stormont,* 24 Kas. 686 ; *Washburn College v. Comm'rs of Shawnee Co.,* 8 id. 344.

*E. W. Cunningham,* for defendant in error :

Under the provision of the state constitution, § 1, article 11, use is made the test, and not ownership or holding. This is a broad distinction, apparent on the face of this section, and made the basis and reason of the opinion in the Washburn College case. 8 Kas. 348. Under the provision in the constitution, the property, in order to be exempt from taxation, must be used exclusively for educational purposes. Under the provision of § 6, such property must be received or held or appropriated for the exclusive purpose of education. The constitution superadds to holding and purpose, use; § 6 simply requires holding for the specified purpose.

It has been sought to make something out of the use of the term "exclusive," as used in § 6. This word, however, qualifies "purpose" and not either of the words "received," "held" or "appropriated," much less the imaginary word "used." Property may be held by this association (within the limits of § 7) without being subject to taxation, so long as it is held with the exclusive or sole purpose of devoting it to the first object of the creation of the association, to wit, the "promotion of education." Is it not quite clear that this association could receive and hold funds for the exclusive purpose of maintaining the institution named, and devote the income therefrom to that purpose, without being liable for the payment of taxes thereon? Is it not equally clear that real estate may be held in the same manner? The object of the legislature is apparent. See *University v. People,* 99 U. S. 323, 324.

*Nelson Case,* for defendant in error :

1. That the charter of defendant in error is a contract between it and the state is so universally held that I presume

35—54 KAS.

it will not be disputed here. See *N. P. Rly. Co. v. Carland*, 5 Mont. 146; same case, 3 Pac. Rep. 150; *Loan & Trust Co. v. Stone*, 20 Fed. Rep. 270; *Tomlinson v. Jessup*, 82 U. S. 454.

2. When there is no constitutional prohibition, the authority of the legislature to make a contract exempting property from taxation is now beyond question. At the time defendant in error received its charter, there was no restriction on the territorial legislature acting on that subject—nothing in the constitution of the United States, and nothing in the organic act creating the territory. By § 24 of the organic act it is provided:

"That the legislative power of the territory shall extend to all rightful subjects of legislation consistent with the constitution of the United States and the provisions of this act."

That this provision conferred on the legislature the authority to exempt the property of defendant in error from taxation, is fully sustained by the following citations, which might be extended almost indefinitely: *Gilman v. Sheboygan*, 67 U. S. 510; *W. C. Rld. Co. v. Taylor Co.*, 52 Wis. 42; same case, 8 N. W. Rep. 833; *Ferris v. Vannier*, 5 Dak. 185; same case, 42 N. W. Rep. 31; *N. P. Rly. Co. v. Barnes*, 2 N. D. 310; same case, 51 N. W. Rep. 386; *N. P. Rly. Co. v. Carland*, 5 Mont. 146; same case, 3 Pac. Rep. 155; *E. T. V. & G. Rld. Co. v. Pickerd*, 24 Fed. Rep. 614; *Tomlinson v. Jessup*, 82 U. S. 454.

3. The territorial legislature having the authority to grant the charter in question, with the provision therein exempting the property of defendant in error from taxation, the exemption, being once granted, is beyond recall, either by the people in framing and adopting their constitution, or by their representatives in the legislature. See *Bridge Co. v. Bridge Co.*, 70 U. S. 51; *Grand Lodge v. City of New Orleans*, 44 La. An. 659; same case, 11 S. Rep. 148; *St. Anna's Asylum v. City of New Orleans*, 105 U. S. 362; *Home of the Friendless v. Rouse*, 75 id. 430.

The opinion of the court was delivered by

HORTON, C. J.: The charter of the Kansas Educational Association of the Methodist Episcopal Church, approved February 3, 1858, gave it perpetual succession and power

"to hold, by gift, grant, devise, purchase, or otherwise, any land, tenements, hereditaments, moneys, rents, goods and chattels of whatsoever kind, which have been heretofore or may hereafter be given, granted or devised to or purchased for the benefit of the association, and may sell and dispose of the same, or any part thereof, or lease or rent or improve the same in any such a manner as shall be deemed most conducive to the interest of the association."

The sixth section declares as follows:

"That all the property or funds, real, personal, or mixed, that may be received, held or appropriated by or for said association for the exclusive purpose of religion or education, including a cemetery not exceeding 40 acres, shall be forever exempt from taxation."

One the 17th day of August, 1889, the association received, by devise from Rev. John McAnulty, for the exclusive purposes of education, lot 140, on Constitution street, in the city of Emporia, in this state. Upon the lot is a dwelling house. The property is held by the association for sale, but in the absence of an acceptable buyer it is rented, and the association uses the rents and proceeds thereof " for the purposes of education, in the support and maintenance of Baker University." The taxes in question were imposed in 1890. The contention on the part of the association is, that under the provisions of its charter, the real estate referred to is exempt from taxation. Section 1, article 11, of the constitution of the state, ordains that

" The legislature shall provide for a uniform and equal rate of assessment and taxation; but all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least $200 for each family, shall be exempted from taxation."

Section 1, chapter 107, Gen. Stat. of 1889, (¶ 6846,) relating to taxation, reads:

"That all property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed by this act."

Assuming that the charter of the association is a contract, with all that term implies, the question is raised, under § 6 thereof, whether the dwelling house in Emporia owned by the association is exempt from taxation.

It was ruled in *Ottawa University v. Comm'rs of Franklin Co.*, 48 Kas. 460, that

"Under our statutes, all property in the state, real and personal, not expressly exempt therefrom, is subject to taxation; and any person claiming immunity from the common burdens of taxation, which should rest equally upon all, must bring himself clearly within the exemption; and hence it is held that a provision creating an exemption should be strictly construed." (*Comm'rs of Miami Co. v. Brackenridge*, 12 Kas. 114; *Washburn College v. Comm'rs of Shawnee Co.*, 8 id. 344.)

1. Taxation—exemption.

Mr. Justice BREWER, speaking for the court, observed in the last case that

"All property receives protection from the state. Every man is secured in the enjoyments of his own, no matter to what use he devotes it. This security and protection carry with them the corresponding obligation to support. It is an obligation which rests equally upon all. It may require military service in time of war, or civil service in time of peace. It always requires pecuniary support. This is taxation. The obligation to pay taxes is coextensive with the protection received. An exemption from taxation is a release from this obligation. It is the receiving of protection without contributing to the support of the authority which protects. It is an exception to a rule, and is justified and upheld upon the theory of peculiar benefits received by the state from the property exempted. Nevertheless, it is an exception; and they who claim under an exception must show themselves within its terms." (See, also, *Vail v. Beach*, 10 Kas. 214.)

Within these and other similar decisions of this court, the

provisions in § 6 of the charter creating an exemption must be construed strictly. All such laws are in derogation of equal rights.

On the part of the association it is insisted, that although the real estate in Emporia is not actually occupied or used for the exclusive purposes of religion or education, yet, as the rents or profits thereof are applied exclusively for the purpose of education, the property is exempt. The contention is that the charter "exempts all property of the association which has been received or which is held or appropriated for religion or education, and that it is not necessary that it be used exclusively for the designated purposes." This construction omits to give sufficient force to the following language of § 6, viz. : "For the exclusive purposes of religion or education." The property exempt from taxation must not only have been received, held or appropriated by or for the association, but it must "be received, held or appropriated for the exclusive purposes of religion or education," except the ground for a cemetery. Therefore, giving the provisions in the statute creating the exemption a strict construction, the charter must be interpreted to mean that the real or personal property of the association must be received, held or appropriated "for the exclusive purposes of religion or education only"; not for lease, investment, or profit. When its real estate is rented to a tenant, or its funds invested in other property for profit, or loaned at interest, the property thus rented or invested or loaned will be liable to taxation, as much as any other property that is rented or invested or loaned, no matter in whose hands it might be. (*Cincinnati College v. The State*, 19 Ohio 110.)

If it had been intended by the legislative assembly of the territory to exempt from taxation *all* of the property of the association, language would have been used in its charter as broad as in that of the St. Anna's asylum, of the city of New Orleans. The charter of that institution exempts "all the property, real and personal, belonging to the asylum." (*St. Anna's Asylum v. City of New Orleans*, 105 U. S. 362.) If

the legislative assembly of the territory had intended to exempt from taxation the property of the association which was rented or invested, with the intention of having the rents or profits applied to carrying on its religious or educational work, it would have stated explicitly in its charter, as in the home of the friendless, of the city of St. Louis, "that the property of the corporation shall be exempt from taxation." (*Home &c. v. Rouse*, 75 U. S. 430.) If we were to construe the charter of the association as exempting from taxation real estate occupied by a tenant, because the rents or profits are applied "for the exclusive purposes of religion or education," then, under its charter, the association could receive and hold large amounts of property, which it could invest in business or loan at interest without paying taxes thereon, if the profits or interest were applied to the designated purposes. If the association might do that, it could go farther, and operate a bank, a store, or any other enterprise, which it had obtained by devise, or otherwise, if the profits were applied exclusively to the purposes of religion or education. Such evidently was not the intention of the legislative assembly of the territory. It was said in *Washburn College v. Comm'rs of Shawnee Co.*, 8 Kas. 344, that

"The accumulation of large amounts of untaxed property by educational, charitable, religious and other institutions is contrary to the fundamental rule requiring an equal rate of assessment and taxation."

Some attempt is made in behalf of the association to support the exemption of its property from taxation, where the rents or profits thereof are applied exclusively for religion or education, on account of the provisions of § 7 of its charter, but these provisions do not relate to taxation. They are a limitation upon the power of the association to hold for any considerable length of time large tracts of land.

2. Religious purposes—dwelling house, not exempt from taxation.

Our conclusion is, that the real estate of the association, upon which the taxes in question were imposed, being occupied by a tenant paying rent, is not exempt from taxation, within the terms of its charter.

The judgment of the district court will be reversed, and the cause remanded, with direction to sustain the demurrer filed by the defendants below.

All the Justices concurring.