No. 30,988.

James Randall Burrow, George C. Bowman, Edith Price Unge and The Central Trust Company, as Executors and Trustees, M. H. Hill, as Trustee under the Will of Joel Randall Burrow, Deceased, Mrs. Sarah H. Thomas and Mary E. Burrow, *Plaintiffs*, v. Walter Pleasant, Walter A. Huxman and Rodney A. Elward, composing the Tax Commission and Inheritance Tax Commission of the State of Kansas, *Defendants*.

(17 P. 2d 833.)

Opinion filed January 7, 1933.

*John L. Hunt* and *Clayton E. Kline,* both of Topeka, for the plaintiffs.
*Ernest E. Blincoe,* attorney for state tax commission, for the defendants.

The opinion of the court was delivered by

SMITH, J.: This is an original action in mandamus and for a declaratory judgment. It is sought to ascertain whether a certain trust created by the terms of a will should pay inheritance tax.

The facts are as follows:

Joel Randall Burrow, a resident of Shawnee county, Kansas, died testate in September, 1931. By his will, among other things he created a trust as follows:

"(c) To segregate and hold in trust as hereinafter provided the sum of fifty thousand dollars to be known as The Ingalls-Burrow Fund, and to expend the income thereof for ten years after the termination of the administration of my estate in the probate court, and thereafter the principal and income of said fund, in their absolute discretion, within the limits herein set forth, for the foundation or support of any corporation organized and operated exclusively for religious, charitable, scientific or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual; or to pay said income or income and principal or any part of it to a trustee or trustees of any exclusively religious, charitable, scientific or educational corporation or organization, or said trustees may use said income or said income and principal or any part thereof for the founding or giving of scholarships for the encouragement or assistance of deserving students.

"I further direct that the trust created by this section of my will shall in any event terminate within the period fixed for the termination of the trust in section (d) hereof, and that within said period all of the principal and income of the fund herein created shall be expended as herein provided."

There were further provisions which gave the trustees authority to apply the fund to only such of the foregoing uses as should be held to be not taxable, to pay the taxes from the fund if all the purposes should be held to be taxable, to pay themselves such compensation as they should agree upon, and to invest the fund as they should see fit. It was also provided that the trust should terminate within a certain time.

The distribution of the estate has progressed to the point where the trustees named are able to segregate and set apart the sum of fifty thousand dollars. They now hold this sum for the purpose of carrying out the provisions of the will. It will be seen that the will provides that for ten years after the termination of the administration of the estate the interest only shall be used for the purposes specified, and that after the expiration of this ten-year period the principal and interest shall be used.

The tax commission held and contends in this case that the trust in question was subject to the inheritance tax.

The statute, R. S. 79-1501, is as follows:

"All property, corporeal or incorporeal, and any interest therein, within the jurisdiction of the state, whether belonging to the inhabitants of the state or not, which shall pass by will or by the laws regulating intestate succession . . . except property to or for the use of literary, educational, scientific, religious, benevolent and charitable societies or institutions: *Provided,* Such use entitle the property so passing to be exempt from taxation; . . . shall be taxed as herein provided."

Attention is called to the language in the will creating the trust.

Plaintiff contends that these purposes bring the trust within the exceptions of R. S. 79-1501.

Defendants contend that as the will provides that for the first ten years the fund shall be invested and only the interest used for carrying out the terms of the trust, the trust is really used for profit and should pay the inheritance tax. Defendants rely on the rule laid down when this state was young in *St. Marys College v. Crowl,* 10 Kan. 442, where a farm owned and operated by a mission school, and used for raising crops which were sold and the proceeds used for the maintenance of the school, was held not to be exempt; and, also, on *Washburn College v. Comm'rs of Shawnee Co.,* 8 Kan. 344, where a holding to the same effect was made with reference to a farm owned by Washburn College. These cases were followed by the case of *Stahl v. Educational Ass'n,* 54 Kan. 542, 38 Pac. 796, where a house and lot had been bequeathed to the association for the use of the association. It was held for sale by the association and in the meantime was rented and the rent used to support the association. The court held the property not to be exempt.

These and similar cases turned upon an interpretation of article 11, section 1 of the constitution. For the purposes of this case that

section is the same now as it was when these cases were passed upon. It is as follows:

"The legislature shall provide for a uniform and equal rate of taxation. All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes . . . shall be exempt from taxation."

The holdings were that the use of the properties for the purpose of education must be direct and immediate and not mediate or remote, and that the use for education must be exclusive of any other use. It is urged by defendants that since the trust fund in this case is to be held for ten years and only the interest used, the same rule should apply to the fund as was applied to the real estate in the cases cited, and it would not be exempt.

The first question to be considered is whether the purposes of the fund in question are charitable and benevolent. In the case of *Masonic Home v. Sedgwick County,* 81 Kan. 859, 106 Pac. 1082, this court had before it the question of whether real property used as a home for Master Masons, their wives and widows and children, was subjected to such a charitable and benevolent use as to cause it to be exempt from taxation. There it was said:

"All of the evidence indicates that the benefits extended to the inmates of the home are not extended in consideration of any payments made by the inmates or by their relatives, and that no person in any way connected with or related to any member of the Masonic fraternity in the state has any legal right to enter the home or to receive the charities therein extended. In other words, the evidence, without conflict, proves that the home is conducted as a pure charity, adding thereto educational and religious opportunities and advantages." (p. 869.)

The criterion set up in that case was, Did any profit flow to the institution from the people to whom its benefits were extended? From the terms of the will creating the trust in question it will be seen that it is inconceivable that any one person or institution should profit from this fund. No one is entitled to its benefits. "It falleth like the gentle rain from heaven." This rule has been generally followed. (See 26 R. C. L. § 278; 2 Cooley on Taxation, 4th ed., § 739.)

We must now consider whether under the terms of the trust the use to which this property is to be put is so direct and immediate as to render it exempt under the statute and constitution. Some argument is made that this should be answered in the negative, on account of the fact the trustees of the fund are authorized to pay com-

pensation to themselves. The argument is that this prevents the use for charity being exclusive. We cannot agree with this argument. Every such fund must have some person to administer it. It is impossible to conceive of a trust that does not have some person whose responsibility it is to see that the fund reaches the use for which intended. It cannot be said this would change the character of the fund itself.

Defendants insist that the fund is not exempt and hence should pay the inheritance tax because the will provides that for the first ten years the interest only of the fund shall be used for the purposes specified. They argue that this is using the fund for profit. Profit for whom? Clearly the only ones who profit are those who are the recipients of the bounty of the fund. No other person profits. The reason that property used for charitable purposes is so universally exempt from taxation is that the property is doing a work which, were it not for funds and institutions of this kind, would be a burden on the public. There are two views to take of what constitutes the use of money. It cannot be worn. It cannot be eaten. It can, however, be used for the purchase of food or clothing, or it can be invested and the interest used for the purchase of these necessities. Some people see in money only the means of acquiring goods which may be purchased with it and used up at once. Some of them can only see in it the means of providing a way whereby these things may be purchased over a long period of time. The latter constitute the frugal class to which the testator in this case belonged. Because he desired that his bounty should be spread over a term of years, rather than be spent all at once, can it be said that such use is not charitable? If this fund had been bequeathed to the trustees to be used immediately, and while the trustees were considering the best use to which the money could be put it should lie in a bank and draw interest, would it be said that this made the fund taxable? It is worthy of note here that while the Central Trust Company is one of the trustees, together with certain men of known financial ability, the will provides that two women of no known financial ability should vote with the trustees. The inference is that the testator did not care to trust his own judgment as to who should benefit from this fund, nor did he wish that to be entirely in the hands of financiers. He preferred, in that matter, to have the benefit of the judgment and intuition of the women named.

In 2 Cooley on Taxation, section 783, it is said:

"Trust funds and endowments for educational institutions are generally held to be included within the exemption statutes, either because specially mentioned in the exemption statute or because of their use. Investment in stocks, of an endowment fund of an educational institution, does not deprive it of exemption from taxation on the theory that thereby it is engaging in commercial enterprises and not organized 'exclusively' for educational purposes. Lands devised in trust for a college, to be sold and the proceeds made an endowment fund for the college, are exempt, under the doctrine of equitable conversion."

This same rule is laid down in 37 Cyc. 939. The same reasoning would cause a fund that had been put in trust for charitable purposes to be exempt as would apply to an endowment fund of an educational institution.

The writ will be allowed, directing the defendants to hold that the fund in question is exempt from payment of the inheritance tax.