No. 40,929

MIDWEST SOLVENTS COMPANY, INC., a Corporation, and ATCHISON HOSPITAL ASSOCIATION, a Corporation, *Appellees,* v. THE STATE COMMISSION OF REVENUE AND TAXATION OF THE STATE OF KANSAS and J. E. KIRCHNER, Director of Revenue of the Department of Revenue, *Appellants.*

(325 P. 2d 511)

*Clarence J. Malone* and *Dean Burkhead,* of Topeka, argued the cause and were on the briefs for the appellants.

*Mark L. Bennett,* of Topeka, argued the cause, and *John E. DuMars* and *Clayton M. Davis,* both of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This is an appeal from a judgment entered by the district court of Atchison county reversing an order of the state commission of revenue and taxation sustaining an assessment made by the director of revenue against Midwest Solvents Company, Inc., for income taxes for the years 1951 to 1954, inclusive, in the amount of $18,839.77 and costs.

The pertinent portions of the stipulated facts are as follows:

Prior to May 26, 1949, plaintiff-appellee Midwest Solvents Company, Inc., hereinafter called "Midwest," was a corporation organized for profit with general charter powers. On that date all outstanding shares of the corporation were sold to plaintiff-appellee the Atchison Hospital Association, a corporation, hereinafter referred to as "hospital," for $8.50 per share. A payment of two dollars per share was made and the balance was secured by a promissory note and paid out of the hospital's earnings through its operation of Midwest.

The hospital was organized in 1912 as a nonprofit, benevolent and charitable association and has been exempt from the payment of income taxes as a charitable and benevolent institution since the passage of the income tax act in 1933. (G. S. 1949, Ch. 79, Art. 32.)

On June 7, 1949, the old Midwest was dissolved by the hospital, the then owner of all the shares of stock of the corporation. Upon dissolution, the assets were transferred to the hospital.

On May 29, 1949, a new Midwest Solvents Company, Inc., was organized not for profit and its articles of incorporation were filed with the secretary of state. All of the stock of the new Midwest is owned by the hospital and the directors of Midwest are chosen by the trustees of the hospital. Upon the organization of the new

Midwest the hospital leased all of the physical assets owned and used by the old Midwest to the new corporation so that its commercial activities could be continued.

Midwest's new charter sets out that it was organized not for profit, and the objects and purposes to be transacted and carried on are to manufacture, compound, purchase or otherwise acquire goods, wares, merchandise and personal property of every class and description, tangible and intangible, and to hold, own, sell or otherwise dispose, trade, deal in and deal with the same, both within and without the state of Kansas; and, among other things, to purchase or otherwise acquire real property and rights therein, and to hold, own, sell or otherwise dispose of, trade, deal in, and deal with the same, both within and without the state of Kansas; to purchase or otherwise acquire, apply for, register, hold, use, sell or in any manner dispose of and to grant licenses or other rights in and in any manner deal with patents, inventions, improvements, processes, formulae, trade-marks, trade names, rights and licenses secured letters patent, copyrights or otherwise. It further provides that the foregoing shall be construed both as purposes and powers, and the enumeration thereof shall not be held to limit or restrict in any manner the general powers conferred on this corporation by the laws of the state; that all profits of the corporation shall belong to and be the property of the hospital and no part of the income of Midwest shall ever be used for private profit to any person or corporation; and that upon dissolution all assets remaining after debts are met shall be distributed to the hospital.

It is admitted that no part of Midwest's net earnings during the period involved herein inured to the benefit of any private individual or corporation. Midwest's application for exemption discloses that it is engaged in the manufacture of alcohol in leased facilities owned by the hospital.

The only question presented is whether Midwest is exempted from paying state income tax by G. S. 1949, 79-3204 (5), which reads:

"The following organizations shall be exempt: . . . (5) corporations and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

It is Midwest's contention that this section was an adoption of the same provision of the internal revenue act. [26 U. S. C. A.,

§ 101 (6).] Midwest also contends that prior to the passage of this provision by the Kansas legislature the United States supreme court held in *Trinidad v. Sagrada Orden*, 263 U. S. 578, 44 S. Ct. 204, 68 L. ed. 458, that this provision makes destination of income and not the source thereof the ultimate test of exemption and that this court is bound by that interpretation. Our statute contains two requirements which Midwest must meet in order to come within the exemption provision: (1) It must be organized and operated exclusively for religious, charitable, scientific, literary or educational purposes; (2) no part of its net earnings may inure to the benefit of any private individual or shareholder.

In view of these requirements, the Sagrada case, *supra*, is not in point here. There, the first requirement was met, in that the corporation seeking to avoid the tax was itself a religious organization engaged primarily in direct religious activities, and its commercial activities were found to be incidental to its religious work. Midwest is organized for and engaged only in commercial activities, serving as a "feeder" corporation for a charitable organization, *i. e.*, the hospital. *Trinidad v. Sagrada Orden*, supra, has previously been distinguished in "feeder" corporation cases. [*United States v. Community Services*, 189 F. 2d 421 (4th Cir., 1951), cert. den., 342 U. S. 932, 72 S. Ct. 375, 96 L. ed. 694; *Universal Oil Products Co. v. Campbell*, 181 F. 2d 451 (7th Cir., 1950), cert. den., 340 U. S. 850, 71 S. Ct. 78, 95 L. ed. 623.]

Midwest further contends that the courts of the United States continued to apply the test of destination of income in determining exemptions under the aforementioned provision until the revision of the exemption by Congress in 1950 [26 U. S. C. A., § 101 (6)]. It is claimed that there is no real conflict among the decisions of the circuit courts of appeal upon this matter. On the other hand, the director contends there is a conflict among the decisions of the various circuits. Some of these courts themselves support the contention of the director. In *United States v. Community Services*, supra, the court said: "The cases in this field are legion, with holdings that are far from consistent." See also *Ralph H. Eaton Foundation v. Commissioner of Int. Rev.*, 219 F. 2d 527 (9th Cir., 1955), and *Lichter Foundation v. Welch*, 247 F. 2d 431 (6th Cir., 1957), which latter case lists the circuits that follow the destination test and those that reject it. Congress recognized this conflict when it passed a clarifying section in 1950, which specifically makes such "feeder" corporations taxable. [26 U. S. C. A., § 101 (6).] These

circuit court cases are, in any event, merely persuasive, since all were decided after Kansas had adopted the act in 1933. (*Standard Steel Works v. Crutcher-Rolfs-Cummings, Inc.*, 176 Kan. 121, 126, 269 P. 2d 402.)

*Midwest* contends the destination of income test was approved in *Burrow v. Pleasant*, 136 Kan. 670, 17 P. 2d 833. The court was there considering an exemption from the Kansas inheritance tax as provided in G. S. 1949, 79-1501, which reads in part:

"All property, corporeal or incorporeal, and any interest therein, within the jurisdiction of the state, whether belonging to the inhabitants of the state or not, which shall pass by will or by the laws regulating intestate succession, . . . except property to or for the use of literary, educational, scientific, religious, benevolent and charitable societies or institutions: *Provided,* Such use entitles the property so passing to be exempt from taxation; . . ."

That statute does not use the word "exclusive." Its exemption of property "for the use of" exempt organizations does not prohibit such organizations from using the property to obtain income. For these reasons the Burrow case, *supra,* has no particular application here.

It has long been the rule in this state that provisions for exemption from taxation are to be strictly construed and one seeking to avoid the burden of taxation must clearly come within the terms of the statutory exemption. In other words, where a corporation claims immunity from the common burdens of taxation which rest equally upon all corporations, such corporation must bring itself clearly within the exemption, and the language relied upon as creating such exemption must be strictly construed. In *State, ex rel., v. Security Benefit Ass'n,* 149 Kan. 384, 385, 386, 87 P. 2d 560, we stated:

"The first rule of law that confronts us is the well-established one that exemptions are to be strictly construed; that where governmental burdens are imposed, and certain exemptions provided, those seeking relief from the burden must show that they clearly come within the terms of the statutory exemption. That principle has been stated in a long line of decisions by this and other courts. Many of them were collected and cited in a comparatively recent decision of this court in the case of *Clinton v. State Tax Commission,* 146 Kan. 407, 71 P. 2d 857:

" 'Moreover, language relied upon as creating exemptions from taxations must be strictly construed. (*Comm'rs of Miami Co. v. Breckenridge,* 12 Kan. 114; *Ottawa University v. Comm'rs of Franklin Co.,* 48 Kan. 460, 29 Pac. 599; *Stahl v. Educational Assoc'n,* 54 Kan. 542, 38 Pac. 796; *Pefly v. Reynolds, Sheriff,* 115 Kan. 105, 222 Pac. 121; *State, ex rel., v. Shawnee County Comm'rs,* 132 Kan. 233, 294 Pac. 915; *Providence Bank v. Billings & Pittman,* 29 U. S.

514, 4 Peters 514, 7 L. Ed. 939; *Bank of Commerce v. Tennessee,* 161 U. S. 134, 146, 16 S. Ct. 456, 40 L. Ed. 645; *Goudy v. Meath,* 203 U. S. 146, 27 S. Ct. 48, 51 L. Ed. 130.)' (p. 423.)"

Our more recent cases hold that under our statutes and our constitution taxation is the rule, exemption is the exception and one claiming an exemption must clearly disclose his right thereto. (*Defenders of the Christian Faith, Inc. v. Horn,* 174 Kan. 40, 44, 254 P. 2d 830; *Sunday School Board of the Southern Baptist Convention v. McCue,* 179 Kan. 1, 293 P. 2d 234.)

The Kansas constitution, Art. 11, § 1, provides:

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, . . . shall be exempted from taxation."

Our cases have held, under our strict construction rule, that property being used for commercial purposes in order to obtain a profit which is to be turned over to an exempt-class organization is not being used "exclusively for . . . charitable . . . purposes," and is therefore not within the exemption. (*Defenders of the Christian Faith, Inc. v. Horn,* supra; *Sunday School Board of the Southern Baptist Convention v. McCue,* supra; and cases collected therein.) It will be observed that the income tax exemption of 79-3204 (5) has the same exemption provision as Art. 11, § 1, construed in those cases. While the last-mentioned cases might be distinguished from the instant case, yet the analogy to be drawn from the construction of the similar provision involved supports the conclusion reached herein.

G. S. 1949, 79-3202 (5) excepts from the definition of "corporations" only municipal and public corporations. Midwest is not such a corporation. The tax is specifically imposed upon corporations by G. S. 1949, 79-3203 (*b*). Midwest has attempted to show that it comes within the exemption provided by G. S. 1949, 79-3204 (5). However, Midwest is a commercial organization whose primary purpose is to engage in commercial profit-making enterprises. The fact that such profits are to be turned over to the hospital, a charitable organization, does not change the primary commercial purpose to the exclusively charitable purpose required by the statute.

Further, G. S. 1949, 79-3204 (12) provides an exemption for certain "feeder" corporations. It exempts "corporations organized for the exclusive purpose of holding title to property, collecting

income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed under this act." Had the legislature desired an exemption for "feeder" corporations which operate commercial enterprises, it had only to insert an appropriate phrase in the act. The omission of such a phrase must be taken as an indication of the legislature's intent not to exempt corporations such as Midwest.

Midwest was in effect organized and operated for two purposes: (1) to engage in commercial business for profit, and (2) to turn over the profits realized from its commercial activities to the hospital, a charitable organization. The second purpose is charitable; the first is not, as none of Midwest's activities were charitable. To qualify for the exemption under 79-3204 (5) the corporation must be "organized and operated exclusively for . . . charitable . . . purposes." Midwest does not meet this requirement. The corporation earning the income and claiming the exemption (Midwest), rather than the recipient of the income (hospital), must be organized and operated exclusively for charitable purposes. It clearly appears to us that in adopting the mentioned exemption provision of the act, it was not the intent of the legislature to allow a purely commercial corporation to claim exemption for the reason that all its stock was owned by an exempt corporation which received as dividends all the net earnings of the commercial organization. If exempt from income tax because all its net earnings inured to the benefit of a religious or charitable organization, a corporation engaged in commercial activities would have an unfair economic advantage over its competitors in the same field of endeavor, and in the event of highly competitive business could eliminate its rivals, who were subject to income tax, by underselling their products on the open market. Certainly, in adopting the act the legislature had no such intention.

In view of what has been said, it follows that the judgment of the trial court is reversed and the assessment of the income tax against Midwest Solvents Company, Inc., is sustained. The trial court is ordered to enter judgment in accordance therewith.

It is so ordered.