## COBB v. BOARD OF COM'RS OF SEMINOLE COUNTY.

No. 5004. Opinion Filed August 3, 1915.

(151 Pac. 220.)

1. **TAXATION—Indian Lands—Exemption from Taxation.** By act of the General Council, Seminole Nation, approved April 23, 1897, entitled "An act to provide for the appointment of town site commissioners and the location of a townsite in the Seminole Nation," among other things it was provided that, "The said commissioners shall have the right to levy and collect taxes in said town for the purpose of maintaining a city government and making such improvements as they may deem necessary; provided, that no taxes shall be levied or collected on the lots in said town during the existence of the Indian government," which act of the General Council of the Seminole Nation was referred to in the Seminole Agreement of December 16, 1897, which agreement was approved by act of Congress, July 1, 1898, c. 542, 30 Stat. L. 567, as follows: "The town site of Wewoka shall be controlled and disposed of according to the provisions of an act of the General Council of the Seminole Nation, approved April 23, 1897, relative thereto; and on extinguishment of the tribal government, deeds of conveyance shall issue to owners of lots as herein provided for allottees; and all lots remaining unsold at that time may be sold in such manner as may be prescribed by the Secretary of the Interior." **Held:** (1) That the proviso in the act of the General Council, relative to taxes, should be read, "provided that no taxes shall be levied or collected by the said commissioners on the lots in said town during the existence of the Indian government."

2. **SAME.** That under the act of the General Council mentioned, and subsequent acts of Congress pertinent thereto, a valuable grant amounting to exemption from taxation, running with the land to subsequent purchasers, was not given.

3. **SAME.** That town lots in Wewoka, Seminole county, acquired under acts herein mentioned, and held by a remote grantee, are subject to general and special taxation under the laws of the state.

(Syllabus by Watts, C.)

*Error from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

Petition by T. S. Cobb to the County Commissioners of Seminole County for the remission of taxes. The petition was denied, and petitioner appealed to the district court. The relief being denied there, he brings error. Affirmed.

*T. S. Cobb, pro se.*

*C. L. Hill,* for defendants in error.

Opinion by WATTS, C. T. S. Cobb claims to be the owner of a number of town lots in Wewoka, Seminole county. He filed a "petition" and affidavit of erroneous assessment with the county commissioners, praying that the taxes and the penalties be remitted and refunded for the years 1908 to 1911, inclusive, and such corrections made as will remedy the assessment and levies, and for other general relief. September 2, 1912, the county commissioners denied the petition. Cobb appealed to the district court of Seminole county, where the facts were stipulated, to wit:

"AGREED STATEMENT OF FACTS.

"It is agreed by the parties hereto that the following is all the material facts in this case, and that judgment of the court may be rendered thereon, to wit:

"(1) That on the 23d day of April, 1897, the General Council of the Seminole Nation, Indian Territory, passed an act entitled, 'An act to provide for the appointment of town-site commissioners and the location of a

town in the Seminole Nation,' said act being in words and figures as set out in Exhibit A attached hereto and made a part hereof.

"(2) That the town site of Wewoka, Seminole county, Okla., was duly selected, surveyed, and platted under and by virtue of said act of the General Council of the Seminole Nation.

"(3) That on the 7th day of July, 1897, the deed attached hereto, marked 'Exhibit B,' and hereby made a part hereof, was duly made, executed, and delivered.

"(4) That on the 22d day of December, 1897, the deed attached hereto, marked 'Exhibit C,' and hereby made a part hereof, was duly made, executed, and delivered.

"(5) That on the 12th day of February, 1900, the deed attached hereto, marked 'Exhibit D,' and hereby made a part hereof, was duly made, executed and delivered.

"(6). That the original Seminole Treaty ratified by act of Congress, approved July 1, 1898, provided as follows, to wit: 'The town site of Wewoka shall be controlled and disposed of according to the provisions of an act of the General Council of the Seminole Nation approved April 23, 1897, relative thereto; and on extinguishment of the tribal government deeds of conveyance shall issue to owners of lots herein provided for allottees; and all lots remaining unsold at the time may be sold in such manner as prescribed by the Secretary of the Interior.

"(7) That the conveyance set out in paragraph 5 hereof was accepted and ratified by an act of the General Council of the Seminole Nation of date of April 18, 1900; and by act of Congress, approved March 3, 1905, it was provided as follows, to wit: 'That the resolutions of the Seminole Council passed and approved on April 18, 1900, accepting and ratifying the contract and sale made by the Seminole Town-Site Commissioners, to John F.

Brown of the unsold lots in the town of Wewoka, Indian Territory, for the sum of $12,000.00, and also providing for the distribution of said money among the Seminole people *per capita*, be and the same is hereby ratified and confirmed.'

"(8) That on the ——— day of ———, 1907, prior to statehood, a municipal government was organized in the town of Wewoka under the laws of Arkansas relating to the incorporation of towns theretofore put in force in the Indian Territory, and that prior thereto the town of Wewoka had no municipal town government.

"(9) That all of the lots involved in this controversy are located and situated in and are a part of the town site of Wewoka as originally selected and platted.

"(10) That plaintiff, T. S. Cobb, is the owner of and holds his title by mesne conveyances through and under the conveyance set out in paragraph 4 hereof to the following lots in Wewoka, Okla., to wit: Lot 2 in block 46; lots 1, 2, 3, 4, 5, 6, in block 48; lots 10, 11, and 12, in block 111; and lots 13, 14, 15, 16, 17, 18, 31, 32, 33, 34, 35, and 36, in block 64.

"(11) That plaintiff, T. S. Cobb, is the owner of and holds his title by mesne conveyances through and under the conveyance set out in paragraph 5 hereof to the following lots in Wewoka, Okla., to wit: Lots 19 and 20 in block 111.

"(12) That the following taxes have been levied and assessed against said real estate, to wit (description of lots, and amount of taxes assessed omitted):

"EXHIBIT A.

"An act to provide for the appointment of townsite commissioners and the location of a townsite in the Seminole Nation.

"Be it enacted by the General Council of the Seminole Nation:

"Section 1. That J. J. Brown, Thomas McGeisey, Thomas Factor, W. L. Joseph, and Dorsey Fife be, and

are hereby appointed as town-site commissioners for the Seminole Nation, and their term of office shall continue for four years and until their successors are appointed by the General Council and qualified. The said commissioners shall each execute a bond in the sum of five thousand dollars, to be approved by the General Council, for the faithful performance of their duty, and they or either of them may be impeached and removed from office, and fined or otherwise punished by the General Council, for malfeasance or improper conduct while in office. Before entering upon their duties the said commissioners shall elect one of their number as president and one as secretary. They shall keep a record of all their doings and transactions and make a report of the same to the General Council once each year.

"Sec. 2. That said commission shall select a suitable tract or tracts of land in the Seminole Nation, not exceeding six hundred and forty acres, for a town to be known and designated as Wewoka. And when selected the said commisison shall cause the same to be surveyed and divided into lots, blocks, streets and alleys of suitable width and size for residence and building purposes, and have the same numbered and platted according to the usual plan adopted by the United States for laying out and establishing town sites. There shall also be set apart one block for public buildings and two additional blocks or squares properly located, for public parks.

"Sec. 3. Should any or all of the lands selected by said commission for purposes herein mentioned be owned, occupied, or claimed by any member of the Seminole Nation for business, agricultural, or grazing purposes, or as a home, or for any other legitimate purpose, then and in that event the said commission shall, before entering upon such lands for the purpose of using them as a town site, make and enter into a contract or agreement with such person or persons for the relinquishment of their right and title to the same, and in consideration thereof the said commissioners shall have the right and they are hereby empowered, to grant and relinquish to such person

or persons owning, occupying or claiming said lands an interest in said town equivalent to one-fourth the entire number of acres which they may own, occupy or claim; provided that such person or persons shall have the right and privilege of selecting in said town the said one-fourth interest, subject to the approval of the said commission, which selection shall include any building that may at that time belong to such person or persons.

"Sec. 4. That a description of the tracts of land which may be selected by said commissioners for the purpose aforesaid, according to the United States survey of the same, shall be reported to the national council, with a plat of the town, showing the survey of same into lots, blocks, streets, and alleys, and also the blocks or squares for parks and public buildings, whereupon the president and secretary of said national council, with the approval of the principal chief of the Seminole Nation, shall convey the tracts of land so selected and reported in trust to the said commissioners, who shall have the general management of the said town. The said commission shall have the power to sell or lease the said town lots upon such terms and conditions and for such other considerations as they may deem proper, and to execute lease as in their judgment may be for the best interests of the said town, the Seminole Nation, and people; provided, that no sale shall be made to noncitizens, whether Indians by blood or otherwise; until the tribal organization as such shall cease to exist: And, provided, that no transfer of the title of lots shall be made to any person or persons, except upon the condition that a building or building, or other valuable improvements, shall be erected thereon within six months from date of lease or purchase of such lot or lots: Provided, that said commissioners may in their discretion, for good cause shown, extend the time for the completion of such building, buildings, or improvements.

"Sec. 5. That said commission shall keep a record of all lots and blocks sold, leased, or otherwise disposed of by them, and they shall pay over to the treasurer of the

Seminole Nation once every six months the net proceeds of sales of the aforesaid three-fourths interest in said town; provided, that the aforesaid one-fourth interest belonging to such person or persons who may be entitled to the same as aforesaid shall be conveyed to such person or persons aforesaid, and said person or persons shall have the exclusive management and control of the same, and may lease, sell, or convey the same upon the terms and conditions as hereinbefore provided for the disposition of other lots and blocks. The said commissioners shall be allowed pay for their services in the management of the town, and on sales of lots five per centum. of all moneys that may be received on account of such sales or leases.

"Sec. 6. That said commissioners are hereby authorized to appoint a city marshal for the said town of Wewoka, who shall have the power to arrest all offenders and disturbers of the peace and protect the lives and property of the people. The said marshal shall execute a bond in such sum as said commission may prescribe for the faithful performance of his duty, and he may be removed from office by said commission for good and sufficient cause. The said commission shall also have the right to appoint a city attorney and police judge for such time and upon such terms and conditions as they may prescribe. They also have the power when the population of said town is two hundred or more, to organize a city government for the said town and provide for the election of a mayor and city council in such manner and upon such terms and conditions as they may prescribe, and they shall fix the salaries or designate the fees to be paid to each of the city officers, subject to the approval of the national council. The said commissioners shall have the right to levy and collect taxes in said town for the purpose of maintaining a city government and making such improvements as they may deem necessary; provided, that no taxes shall be levied or collected on the lots in said town during the existence of the Indian government.

"Sec. 7. That the town of Wewoka shall, and is hereby, declared to be the capital and seat of government of the Seminole Nation, and shall remain as such so long as the present tribal organization exists.

"Sec. 8. This act shall take effect and be in force from and after its passage.

"I hereby certify that the foregoing act was duly considered and passed by the General Council of the Seminole Nation at Wewoka, I. T., on this 23d day of April, 1897.

"NUTHCUP HARJO,
"President of the Council.

"Attest:                 · T. S. McGEISEY, Secretary.
"Approved April 23, 1897.

"JOHN F. BROWN, Principal Chief."

Exhibit B is the deed from the Seminole Nation by the President and Secretary of the General Council to the commissioners. It recites the acts of the General Council and grants a certain acreage in trust.

Exhibit C is a deed from the commissioners to John F. and A. J. Brown to the one-fourth acreage mentioned. It recites a portion of the act of the General Council and grants certain described lots upon conditions mentioned in the act.

Exhibit D is a deed from the commissioners to John F. Brown, a citizen of the Seminole Nation. It also refers to and recites a part of the act of the General Council and grants certain lots upon conditions mentioned in the act.

October 22, 1912, the district court gave judgment against plaintiff in error, Cobb, and he appeals, assigning as error: (1) In overruling the motion of plaintiff in error for a new trial. (2) The judgment rendered is

contrary to the evidence. (3) The judgment rendered is not sustained by sufficient evidence and is contrary to law. (4) In not rendering judgment for the plaintiff in error on the pleadings and agreed statement of facts.

From the record and brief of counsel the question for decision is: Are the lots in question situated in the town of Wewoka, Seminole county, subject to general and special taxation under the laws of the state?

The Seminoles, like other of the Five Civilized Tribes, entered into an agreement with the United States, under date of December 16, 1897, which was approved by Act of Congress July 1, 1898, c. 542, 30 St. L. 567. We find in the agreement mentioned, referring to the townsite of Wewoka, the following:

"The town site of Wewoka shall be controlled and disposed of according to the provisions of an act of the General Council of the Seminole Nation, approved April 23, 1897, relative thereto, and on extinguishment of the tribal government, deeds of conveyance shall issue to owners of lots as herein provided for allottees; and all lots remaining unsold at that time may be sold in such manner as may be prescribed by the Secretary of the Interior. * * *

"When the tribal government shall cease to exist the principal chief last elected by said tribe shall execute, under his hand and the seal of the nation, and deliver to each allottee a deed conveying to him all the right, title, and interest of the said nation and the members thereof in and to the lands so allotted to him, and the Secretary of the Interior shall approve such deed, and the same shall thereupon operate as relinquishment of the right, title, and interest of the United States in and to the land embraced in said conveyance, and as a guarantee by the United States of the title of said lands to the allottee; and the acceptance of such deed by the allottee shall be a relinquishment of his right to and interest in all other

lands belonging to the tribe, except such as may have been excepted from allotment and held in common for other purposes. Each allottee shall designate one tract of forty acres, which shall, by the terms of the deed, be made inalienable and nontaxable as homestead in perpetuity."

Act of March 3, 1903, c. 994, 32 Stat. 1008 (Bledsoe, 2d Ed.), sec. 691:

"That the tribal government of the Seminole Nation shall not continue longer than March fourth, nineteen hundred and six: Provided, that the Secretary of the Interior shall at the proper time furnish the principal chief with blank deeds necessary for all conveyances mentioned in the agreement with the Seminole Nation contained in the act of July first, eighteen hundred and ninety-eight (Thirtieth Statutes, page five hundred and sixty-seven), and said principal chief shall execute and deliver said deeds to the Indian allottees as required by said act, and the deeds for allotment, when duly executed and approved, shall be recorded in the office of the Dawes Commission prior to delivery and without expense to the allottee until further legislation by Congress, and such records shall have like effect as other public records."

Act of Congress approved April 26, 1906, c. 1876, 34 Stat. L. 137, provides:

"Sec. 5. * * * And all patents or deeds to allottees and other conveyances affecting lands of any of said tribes shall be recorded in the office of the Commissioner to the Five Civilized Tribes, and when so recorded shall convey legal title, and shall be delivered under the direction of the Secretary of the Interior to the party entitled to receive the same. *. * *

"Sec. 6. * * * Provided, that the principal chief of the Seminole Nation is hereby authorized to execute the deeds to allottees in the Seminole Nation prior to the time when the Seminole government shall cease to exist."

"Sec. 19. * * * Provided further, that all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation as long as the title remains in the original allottee."

"Sec. 28. That the tribal existence and present tribal governments of the * * * and Seminole tribes or nations are hereby continued in full force and effect for all purposes authorized by law, until otherwise provided by law, but the tribal council or legislature in any of said tribes or nations shall not be in session for a longer period than thirty days in any one year: Provided, that no act, ordinance, or resolution (except resolutions of adjournment) of the tribal council or legislature of any of said tribes or nations shall be of any validity until approved by the President of the United States: Provided further, that no contract involving the payment or expenditure of any money or affecting any property belonging to any of said tribes or nations made by them or any of them or by an officer thereof, shall be of any validity until approved by the President of the United States."

Act of Congress approved March 2, 1906 (34 Stat. L. 822), provides:

"* * * That the tribal existence and present tribal governments of the * * * and Seminole tribes or nations of Indians in the Indian Territory are hereby continued in full force and effect for all purposes under existing laws until all property of such tribes, or the proceeds thereof, shall be distributed among the individual members of said tribes unless hereafter otherwise provided by law."

Act of Congress May 27, 1908 (35 Stat. L. 312), provides:

"Sec. 4. That all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes. * * * *"

The plaintiff in error contends that in view of the language used in the Seminole Town Site Act, to wit:

"The said commissioners shall have the right to levy and collect taxes in said town for the purpose of maintaining a city government and making such improvements as they may deem necessary: Provided, that no taxes shall be levied or collected on the lots in said town during the existence of the Indian government"

—his lots are not taxable, and cites in support thereof *Goat v. United States,* 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841; *Choate v. Trapp,* 224 U. S. 665, 32 Sup. Ct. 565, 66 L. Ed. 941; *Whitmore v. Trapp,* 33 Okla. 429, 126 Pac. 578; *Gleason v. Wood,* 224 U. S. 679, 32 Sup. Ct. 571, 56 L. Ed. 947; and *English v. Richardson,* 224 U. S. 680, 32 Sup. Ct. 571, 56 L. Ed. 949. But an investigation of these authorities shows primarily quite different questions involved and they are inapplicable here. The section of the act of the General Council just quoted should be read and considered in the light of the entire act, from which we get the general scheme and purpose thereof. Section 4 provides that no sale shall be made to noncitizens, until the tribal organization shall cease to exist. Section 6 of the act reveals that the commissioners or trustees were given authority to appoint a city marshal, police judge, and city attorney, who should have limited authority, and when the population became 200 the commissioners were given power to organize a city government, providing for the election of certain officials, all of which were subject to the approval of the General Council. Whether any steps were ever taken in furtherance of this delegated power is not shown by the record, but from section 8 of the agreed statement of facts we take it that nothing was accomplished, and in this light we cannot see how the plaintiff in error can

claim any benefits amounting to an exemption from taxation.

It occurs to us that, in order to arrive at the true intention of the General Council, the proviso of section 6 should be read:

"Provided that no taxes shall be levied or collected by the said commissioners on the lots, in said town during the existence of the Indian Government"

While a proviso may embrace independent legislation, the general rule is that it only modifies that to which it is attached.

In Lewis' Sutherland, Statutory Construction, vol. 2 (2d Ed.) section 352 (233), it is said:

"The natural and appropriate office of the proviso being to restrain or qualify some preceding matter, it should be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter. It is to be construed in connection with the section of which it forms a part, and it is substantially an exception. If it be a proviso to a particular section, it does not apply to others unless plainly intended. It should be construed with reference to the immediately preceding parts of the clause to which it is attached. In other words, the proviso will be so restricted in the absence of anything in its terms, or the subject it deals with, evincing an intention to give it a broader effect. It is not an arbitrary rule to be enforced at all events, but is based on the presumption that the meaning of the lawmaker is thereby reached. 'While the position of a proviso in a statute has a great and sometimes a controlling influence upon the extent of its applicability, yet the inference from its position cannot override its plain general intent.' If irrelevant to the enacting part and meaningless with reference thereto, or repugnant to the body of the act, it has been rejected. And it was remarked in argument in *Ihmsek v. Monongahela Naviga-*

*tion Co.*: 'If it was not intended to restrain the general clause it was a nullity.' This is taking a proviso very strictly. The intention of the lawmaker, if plainly expressed, must have the force of law, though it may be in the form of a proviso; the intention expressed is paramount to form. The form, however, is influential in the inquiry for the intent. The proper function of a proviso being to limit the language of the Legislature, it will not be deemed intended from doubtful words to enlarge or extend the act or the provision on which it is ingrafted. Where it follows and restricts an enacting clause generally in its scope and language, it is to be strictly construed and limited to objects fairly within its terms."

Of course, the Seminole Council could not enact independent legislation exempting property from taxation by the future state. The general context of the act in question and provisions of the Seminole Treaty, relative to the town site of Wewoka, *supra*, and later acts of Congress, indicate to our mind that it was never the intention that the provision of the act of the Seminole Council should have the force as contended for by plaintiff in error.

As stated above, the act of the Seminole Council unaided by any congressional legislation was a nullity, and we must therefore look to the acts of Congress. Plaintiff in error contends that the provision in the Seminole Agreement relative to the Wewoka town site approved July 1, 1898, *supra*, put in force the exemption clause under discussion; but a careful reading of the same does not so convince us. The provision says: "The town site of Wewoka shall be controlled and disposed of according to the provisions, etc." The words "controlled and disposed of" certainly convey the idea that the town site commissioners or trustees should continue to act as such, and

convey the lots to Seminole citizens only, and on extinguishment of the tribal government the Secretary of the Interior was given authority to dispose of any lots then unsold. As we understand from the record the last contingency never happened, as the town site commissioners or trustees conveyed all unsold lots to John F. Brown (Exhibit B), who, with A. J. Brown, Seminole citizens, are remote grantors of plaintiff in error. We must therefore arrive at the conclusion that the specific grant of exemption from taxation after the title passed from the commissioners or trustees until extinguishment of the technical tribal government was not given by the provision above quoted.

We cannot agree with plaintiff in error that under the different statutes mentioned a valuable grant was given which was inseparable and ran with the land to any subsequent grantee, amounting to a vested right, such as defined in *Choate v. Trapp, Gleason v. Wood,* and *English v. Richardson, supra,* and *New Jersey v. Wilson,* 7 Cranch, 164, 3 L. Ed. 303.

If the case at bar were parallel to the cases cited by plaintiff in error, with the additional fact that title had been transferred and not held by the allottee, it would still remain quite debatable. *County Commissioners of Miami County v. Brackenridge,* 12 Kan. 114; *McMahon v. Welsh, etc.,* 11 Kan. 280; *Peck v. Miami County et al.,* Fed. Cas. No. 10,891, 4 Dill. 370; *Ottawa University v. Com'rs of Franklin Co.,* 48 Kan. 464, 29 Pac. 460; *Stahl v. Educational Ass'n,* 54 Kan. 548, 38 Pac. 796; *Commissioners of Miami County v. Wan-zop-pe-che,* 3 Kan. 364; *Pennock v. Franklin County,* 103 U. S. 44, 26 L. Ed. 367; *Goudy v. Meath,* 203 U. S. 146, 27 Sup. Ct. 48, 51 L. Ed. 130.

Snyder's Comp. Laws of 1909, section 7541, provides:

"All property in this state, whether real or personal, * * * except such as is exempt, shall be subject to taxation."

In 37 Cyc. 891, it is stated:

"A grant of exemption from taxation is never presumed; on the contrary, in all cases of doubt as to the legislative intention, or as to the inclusion of particular property within the terms of the statute, the presumption is in favor of the taxing power, and the burden is on the claimant to establish clearly his right to exemption."

And on page 892 it is said:

"An alleged statutory grant of exemption from taxation will be strictly construed. Such a privilege or immunity cannot be made out by inference or implication, but must be conferred in terms too clear and plain to be mistaken, and in fact admitting of no reasonable doubt."

We are therefore of the opinion that the trial court did not commit error, and the judgment should be affirmed.

By the Court: It is so ordered.