## CAESAR et al. v. KROW et al.

No. 8641—Opinion Filed Dec. 10, 1918.

(176 Pac. 927.)

(Syllabus.)

**Indians—Allotment—Jurisdiction of District Court—Incidental Right of Possession.**

On April 27, 1915, the district courts of

this state were without jurisdiction of a suit by the full-blood Indian heirs of a deceased Pawnee Indian involving lands allotted to the decedent under General Allotment Act Feb. 8, 1887, c. 119, 24 Stat. at L. 388, as amended by Act Feb. 28, 1891, c. 383, 26 Stat. at L. 794, where such suit necessarily included the determination of the title, and, incidentally, the right to the possession of the Indian allotment while the same was held in trust by the United States.

Error from District Court, Pawnee County; Conn Linn, Judge.

Action by Kate Caesar and another against A. D. Krow and another. Demurrer to petition sustained, and plaintiffs bring error. Affirmed.

Edwin R. McNeill, for plaintiffs in error.

McGuire & Devereux, for defendants in error.

RAINEY, J. This proceeding in error was commenced to review the judgment of the district court of Pawnee county, Okla., sustaining a demurrer to the petition of Kate Caesar and Tom Morgan, plaintiffs in said court and plaintiffs in error here, against A. D. Krow and I. K. Berry, defendants below, defendants in error here, for the recovery of the possession of two certain tracts of land in said county, being the allotments of Agnes Akin Smith and Simond Smith, respectively, who were full-blood members of the Pawnee Tribe or Band of Indians. The parties will hereinafter be designated as they appeared in the trial court.

The plaintiffs alleged in their petition that Simond Smith died in March, 1894, intestate leaving as his sole and only heir his wife, Agnes Akin Smith, and his grandchild, Hiram Smith, and that in September, 1904, Agnes Akin Smith died seized of her own allotment and of an undivided one-half interest in the allotment of her husband, Simond Smith, and that plaintiffs are her sole and only heirs at law; that the defendants claim title and right of possession to the allotment of Simond Smith through deeds executed by George Beaver and Emma Riggs to A. D. Krow, which were approved by the Secretary of the Interior, and by a deed from George Beaver, Emma Riggs, and A. D. Krow, as legal guardian of Mary and Andy Smith, which deed was also approved by the Secretary of the Interior; that the defendants claim title to the allotment of Agnes Akin Smith by virtue of a deed executed by George Beaver and Emma Riggs and approved by the Secretary of the Interior; and that I. K. Berry, one of the defendants, claims some right, title,

and interest to the allotment of the said Agnes Akin Smith by virtue of a deed from Samuel Horsechief and Maggie Horsechief, his wife.

It is also alleged that no administration was ever had upon the estates of Simond Smith and Agnes Akin Smith, deceased, either by the state courts or by the Department of the Interior, and that no proceedings have ever been had before any court or tribunal to determine the heirs of the said Simond Smith and Agnes Akin Smith.

It is conceded in the briefs filed on behalf of the respective litigants that the sole question presented to and decided by the trial court was whether the district court of Pawnee county had jurisdiction of the action. The lands in controversy were allotted under the provisions of allotment act, approved February 8, 1887 (24 Stat. at L. 388, c. 119), as amended by the Acts of February 28, 1891 (26 Stat. at L. 794, c. 383), and March 3, 1893 (27 Stat. at L. 644, c. 209), the schedule of said allotments being dated July 8, 1893 and approved by the Acting Secretary of the Interior July 10, 1893. The certificates of allotment contain the following provision:

"Now, Know Ye: That the United States of America, in consideration of the promises and in accordance with the provisions of the fifth section of said Act of Congress of the 8th day of February, 1887, hereby declares that it does and will hold the land thus allotted (subject to all the restrictions and conditions contained in said fifth section) for the period of twenty-five years, in trust for the sole use and benefit of the said (name of allottee) or in case of his decease for the sole use of his heirs according to the laws of the state or territory where such land is located and that at the expiration of said period the United States will convey the same by patent to said Indian or his heirs, as aforesaid, in fee discharged of said trust and free of all charges or incumbrances whatsoever; provided: That the President of the United States may, in his discretion, extend the said period."

At the time this action was instituted, the trust period had not expired and the supervisory power and control of the United States over the allotments of Agnes Akin Smith and Simond Smith, deceased, was still in force so far as the title remained in any of the heirs of said allottees. United States v. Rickett, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532; Wm. McKay v. Agnes Kalyton, 204 U. S. 458, 27 Sup. Ct. 346, 51 L. Ed. 566. And since the United States still retained the title to the land in trust for the heirs of the decedents and had administra-

tive control thereof so far as the claimants in this suit are concerned, it appearing from the petition that they are full-blood Indians of the Pawnee Tribe and heirs of the decedents, the Secretary of the Interior had sole authority to settle all controversies involving the determination of the title, and, incidentally, the right to the possession of said Indian allotments, and the suit here was not cognizable by any court, either state or federal, unless such authority had been theretofore expressly conferred by an act of Congress. Bond v. United States (C. C.) 181 Fed. 613; Wm. McKay v. Agnes Kalyton, supra.

Inasmuch as the jurisdiction of the district court of Pawnee county to hear and determine this action, if it exists at all, must be found to have been conferred by some act of Congress, we will examine the congressional legislation on the subject. There is but one act of Congress conferring jurisdiction of suits involving the right of any person of Indian blood or descent to any allotment of land under any law or treaty of the United States on any court, and that is the Act of August 15, 1894 (28 Stat. at L. 286, c. 200), as amended by the Act of February 6, 1901 (31 Stat. at L. 760, c. 217 [U. S. Comp. St. 1916, § 4214]), which, so far as pertinent, is as follows:

"That all persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto, in the proper circuit court of the United States; and said circuit courts are hereby given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty "And in said suit the parties thereto shall be be the claimant as plaintiff and the United States as party defendant) ; and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, but this provision shall not apply to any lands now held by either of the Five Civilized Tribes, nor to any of the lands within the Quapaw Indian Agency: Provided, that the right of appeal shall be allowed to either party as in other cases."

The provision in the amended act, to wit: "And in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant," was not in the original act, and, before the act was amended in this particular, it had been held that the United States was not a necessary party to such suits. Hy-Yu-Ese-Mil-Kin v. Smith, 194 U. S. 401, 24 Sup. Ct. 676, 48 L. Ed. 1039.

The authority to determine heirship of deceased Indian allottees under the General Allotment Act, supra, which, prior to the Act of August 15, 1894, reposed in the Secretary of the Interior was by the act just referred to conferred on the circuit courts of the United States. Wm. McKay v. Agnes Kalyton, supra.

By section 1 of the Act of June 25, 1910 (36 Stat. at L. 855, c. 431 [U. S. Comp. St. 1916, § 4226]), Congress specifically conferred upon the Secretary of the Interior authority to ascertain, after notice and hearing, the heirs of any Indian to whom an allotment had been made or should thereafter be made in cases where the Indian died before the expiration of the trust period and before the issuance of a fee-simple patent. However, it is provided in said act that sections 1 and 2 thereof shall not apply to the state of Oklahoma. The allotments of these deceased Pawnee Indians being situate in the state of Oklahoma at the time of the passage of this act, the amendment did not apply to them, and it therefore follows that, if jurisdiction had been conferred upon any court up to this time to determine the question of heirship of these Indians, it was given only to the circuit courts of the United States by the Act of August 15, 1894 (28 Stat. at L. 286, c. 290), as amended by the Act of February 6, 1901 (31 Stat. at L. 760, c. 217).

The case of Wm. McKay v. Agnes Kalyton, supra, was instituted originally in the circuit court of Umatilla county, Ore., and the facts out of which the action arose are very similar to those set forth in the petition in this case. The Oregon state court assumed jurisdiction, the cause was tried therein, judgment rendered on the merits, and an appeal taken to the Supreme Court of that state, which court affirmed the judgment of the district court. 45 Ore. 116, 74 Pac. 491, 78 Pac. 332. An appeal was then taken to the Supreme Court of the United States, which held that the Oregon courts were without jurisdiction of the case; the second paragraph of the syllabus reading as follows:

"State courts were not given jurisdiction of controversies necessarily involving the determination of the title, and, incidentally, of

the right to the possession of Indian allotments while the same were held in trust by the United States, by the provision of the Act of August 15, 1894 (28 Stat. at L. 286, c. 290), delegating to the federal Circuit Courts the power to determine such questions, since the purpose of that act to continue the exclusive federal control over disputes concerning allotments which, prior to that act, could only have been decided by the Secretary of the Interior, is manifested by its provision that a judgment or decree in any such controversy shall be certified by the court to the Secretary of the Interior, and by the provision of the Act of February 6, 1901 (31 Stat. at L. 760, c. 217), that in such suits the parties thereto shall be the claimant as plaintiff and the United States as party defendant.' "

In disposing of the contention that the action did not involve the title but the possession, merely, of the land sued for, the court said:

"The suggestion made in argument that the controversy here presented involved the mere possession, and not the title, to the allotted land, is without merit, since the right of possession asserted of necessity is dependent upon the existence of an equitable title in the claimant under the legislation of Congress to the ownership of the allotted lands. Indeed. that such was the case plainly appears from the excerpt which we have made from the concluding portion of the opinion of the Supreme Court of Oregon."

It will thus be seen that under the Act of 1894, and the amendment of 1901, jurisdiction of the settlement of controversies arising befort the expiration of the trust period and before issuance of patent involving allotments of lands made under the Act of February 8, 1887, was vested solely in the circuit courts of the United States. Although the Act of June 25, 1910, by which the Secretary of the Interior was reinvested with exclusive authority and jurisdiction to determine the heirs of the allottee Indian who were entitled to succeed to the allotment of such deceased Indian under the Act of February 8, 1887, supra, did not apply to the state of Oklahoma, the act of February 14, 1913 (37 Stat. at L. 678, c. [U. S. Comp. St. 1916, § 4228]), the same being amendatory of the Act of June 25, 1910, extends the operation of said act to all Indians, except the Five Civilized Tribes and the Osage Indians. Bledsoe, in paragraph 276, p. 303, in the second edition of his Indian Land Law, in the consideration of heirship as affected by section 6488, Rev. Laws of 1910, says:

"The provisions of this statute are not applicable to allotted Indian lands, where the title is held by the United States in trust for the use and benefit of the allottee; that is to say, where the lands have been allotted and a preliminary or trust patent only issued. Prior to June 25, 1910, if the jurisdiction of the Secretary of the Interior was not exclusive in the matter of determining the heirs of allotted lands held in trust by the United States, only the federal courts had jurisdiction to determine the same.

"For a number of years state courts assumed jurisdiction to determine heirship in such cases, but it was finally decided by the Supreme Court of the United States that they possessed no such jurisdiction.

"By the Act of June 25, 1910, except as to allotted lands in Oklahoma, all jurisdiction of all courts to determine heirship where allotted lands were held in trust was divested and full, complete and exclusive jurisdiction vested in the Secretary of the Interior to determine such heirship.

"By the Act of February 14, 1913, amending section 2 of the Act of June 25, 1910, the jurisdiction of the Secretary of the Interior to determine heirship is extended to lands inherited from allottees of all Indian tribes while the lands are held in trust or subject to restriction on alienation, except the Five Civilized Tribes and the Osages."

But counsel for plaintiffs say:

"It is our contention that, when the Department of the Interior approved the deeds to the land, the United States government relinquished all of its rights, title, and interest therein, and that by such approval on the part of the Department of the Interior the land then came within the exclusive jurisdiction of the state courts."

Obviously, when the Indian title is extinguished by approval of deeds from all the Indian heirs by the Secretary of the Interior, the United States government relinquishes control of the land; but plaintiffs predicate their case on the ground that the Indian title was not extinguished by the approval of certain deeds of purported heirs to the defendants, but, on the contrary, that the Indian title was in the plaintiffs, who, it is alleged, were full-blood Pawnee Indians. The trust period not having expired, the land so far as their title and interests are concerned, is still within the jurisdiction of the United States government and subject to the control of the Secretary of the Interior, as provided by the acts hereinbefore discussed.

The case of Swartzell et al. v. Rogers, 3 Kan. 370, cited in support of the contention of plaintiffs, in which it was held that the state court had jurisdiction of controversies between Indians, was founded on the proposition that the Indian title to the land in controversy in that action had been previously extinguished. Neither does the case of Dagenett v. Jenks et al., 7 Kan. App. 499, 54

Pac. 135, support plaintiffs' case. The land there involved was patented to one Edward Dagenett, an Indian, under a patent restricting his right to convey the same unless his conveyance was approved by the Secretary of the Interior. The patentee conveyed the land to Noel Dagenett. which conveyance was duly approved as the law provided, and a mortgage thereafter executed by the grantee. The Supreme Court of Kansas properly held that said conveyance and approval divested the title of the United States therein, and that the state court had jurisdiction of an action to foreclose the mortgage.

The decision in Egan v. McDonald, 36 S. D. 92, 153 N. W. 915, is also based upon the proposition that the Indian title had theretofore been extinguished by the approval of the Secretary of the Interior of a deed from all the heirs.

There is a clear distinction between the cases cited and this case. Here it clearly appears from the alleged facts set forth in plaintiffs' petition that the Secretary of the Interior has not approved deeds from all the Indian heirs.

The conclusion that the state court was without jurisdiction does not, as claimed, leave plaintiffs without a forum in which to present their case. for in Franklin K. Lane, Secretary of the Interior, v. United States of America, 241 U. S. 201, 36 Sup. Ct. 599, 60 L. Ed. 956, it was held under the Act of June 25, 1910, that, although the secretary of the Interior had recognized certain adopted children of a deceased Indian allottee as his heirs. he had not exhausted his power to reopen the question of the heirship of said decedent, since during the trust period the Indian allotment was still in the administrative control of the Department of the Interior, because of the trust imposed by law.

It follows that the trial court did right in sustaining demurrer to the plaintiff's petition and dismissing the action.

The judgment is therefore affirmed.

All the Justices concur.