## WILLIAMS v. HEWITT.

No. 9476—Opinion Filed Jan. 28, 1919.

Rehearing Denied May 27, 1919.

(181 Pac. 286.)

1. **Indians—Control of Estates—Special Legislation.**

The estates of members of the Osage Tribe of Indians are governed by special legislation, and the provisions of general legislation do not apply.

2. **Guardian and Ward—Guardian of Minor Allottees—Power of County Court to Appoint.**

The office of a proviso in an act is to conditionally suspend the operation of an antecedent clause, and does not create an affirmative condition, nor defeat the operation of one already in existence.

(Syllabus by Springer, C.)

Error from District Court, Osage County.

Proceeding by Rosa Hewitt Williams against George W. Hewitt for the appointment of a guardian of certain minors. Proceeding dismissed, and petitioner brings error. Affirmed.

H. C. Hargis, for plaintiff in error.

Grinstead & Scott, for defendant in error.

Opinion by SPRINGER, C. The parties will be referred to as petitioner and respondent. This case is in this court on petition in error from a judgment of dismissal by the district court of Osage county. The petitioner, a member of the Osage Tribe of Indians, filed a petition in the county court of Osage county, praying for the appointment of a guardian for the estate of Valorie and Loretta Hewitt, minors, aged 11 and 9 years, respectively. These minors are members of the Osage Tribe of Indians, and their estates consist only of lands, funds, and mineral interests allotted to them by reason of their tribal relations, under the act of Congress of June 28, 1906, commonly known and referred to as the Osage Allotment Act.

The petitioner is the mother of the minors, for whose property the appointment of a guardian is sought in these proceedings, and likewise she is the mother of Maritus Hewitt, a daughter 7 years of age, and William G. Hewitt, a son 5 years of age; the two last-named children not being members of the Osage Tribe of Indians, having been born since the close of the tribal rolls, and therefore having no estates, Indian or otherwise. The respondent is the father of all these children and is a nonmember of the Osage Tribe of Indians.

On the 9th day of March, 1917, the district court of Osage county granted a divorce to the respondent, and also awarded the care and custody of all of the children of the parties to this proceeding, to him, together with all of the rights and interests of said children of every kind and nature whatsoever. The property interests of said children were awarded to the father for their care, control, and education.

Prior to the act of Congress of June 28, 1906 (34 Stat. 539, c. 3572), the Osage Tribe of Indians was the owner of what was known as the Osage Reservation, now Osage county, Okla., and a trust fund something in excess of $8,000,000, which was the proceeds of the sale of tribal lands in Kansas, and which fund was held in the treasury of the United States; the government paying interest thereon at the rate of 5 per

cent. per annum, which was paid quarterly and prorated to the individual members of the tribe. In addition to the interest payment, the Osage Tribe of Indians received rentals from their lands for grazing and agricultural purposes. Their lands were held in common; the government collecting the rentals and paying the same to individual members at the same time and in the same manner the interest payments were made.

Prior to the Allotment Act these people received large sums as royalties accrued from oil and gas and mining operations, and these royalties were collected and distributed by the department, as were the payments of their rentals and interest on their trust fund. These in a great measure constituted all the tribal incomes prior to the allotment. During all the time the government acted as guardian of these people in the collection and payment of money due the tribe, the funds belonging to the minor members were paid to the parents. Paragraphs 1 and 2 of section 4 of the Allotment Act read:

(1) "That all the funds of the Osage Tribe of Indians, and all the moneys now due or that may hereafter be found to be due to the said Osage Tribe of Indians, and all moneys that may be received from the sale of their lands in Kansas under existing laws, and all moneys found to be due to said Osage Tribe of Indians on claims against the United States, after all proper expenses are paid, shall be segregated as soon after January first, nineteen hundred and seven, as is practicable and placed to the credit of the individual members of the said Osage Tribe on a basis of a pro rata division among the members of said tribe, as shown by the authorized roll of membership as herein provided for, or to their heirs as hereinafter provided, said credit to draw interest as now authorized by law; and the interest that may accrue thereon shall be paid quarterly to the members entitled thereto, except in the case of minors, in which case the interest shall be paid quarterly to the parents until said minor arrives at the age of twenty-one years: Provided, that if the Commissioner of Indian Affairs becomes satisfied that the said interest of any minor is being misused or squandered he may withhold the payment of such interest: And provided further, that said interest of minors whose parents are deceased shall be paid to their legal guardians, as above provided."

(2) "That the royalty received from oil, gas, coal, and other mineral leases upon the lands for which herein provided, and division are herein provided, and all moneys received from the sale of town lots, together with the buildings thereon, and all moneys received from the sale of the three reserva-

tions of one hundred and sixty acres each heretofore reserved for dwelling purposes, and all money received from grazing lands, shall be placed in the Treasury of the United States to the credit of the members of the Osage Tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this act, and the same shall be distributed to the individual members of said Osage Tribe according to the roll provided for herein, in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States, except as herein provided."

And section 7 of said act provides:

"That the lands herein provided for are set aside for the sole use and benefit of the individual members of the tribe entitled thereto, or to their heirs, as herein provided; and said members, or their heirs, shall have the right to use and to lease said lands for farming, grazing, or any other purpose not otherwise specifically provided for herein, and said members shall have full control of the same, including the proceeds thereof; Provided, that parents of minor members of the tribe shall have the control and use of said minors' lands, together with the proceeds of the same, until said minors arrive at their majority. * * *"

There is nothing in the Allotment Act which confers jurisdiction upon the county court of Osage county, or any other court, to appoint a guardian for the management and control of lands, funds or property belonging to members of the Osage Tribe of Indians. All of the affairs of members of the Osage Tribe of Indians are governed by special legislation, and the provisions of the general laws do not apply. Lynn v. Brown, 38 Okla. 209, 132 Pac. 810.

The Allotment Act specifically provides:

"And the interest that may accrue thereon * * * shall be paid quarterly to the parents until said minors arrive at the age of twenty-one years: Provided, that if the Commissioner of Indian Affairs becomes satisfied that said interest of any minor is being misused or squandered he may withhold the payment of such interest."

It is plain, from the provisions of this Act, that it was the intention of Congress to confer upon the Commissioner of Indian Affairs supervisory control of payments to be made to parents of the minors' interest; and it is equally plain that it was the intention of Congress to grant unto the parents the right to control and use the minors' lands, together with the proceeds of the same until the minors arrived at their majority. This condition continued until the act of Congress of April 18, 1912, (37 Stat. 86, c. 83), which act is supple-

mentary and amendatory of the Allotment Act, section 3 of which provides:

"That the property of deceased and of orphan, minor, insane, or other incompetent allottees of the Osage Tribe, such incompetent being determined by the laws of the state of Oklahoma, which are hereby extended for such purpose to the allottees of said tribe, shall, in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma, but a copy of all papers filed in the county court shall be served on the superintendent of the Osage Agency at the time of filing, and said superintendent is authorized, whenever the interests of the allotee require, to appear in the county court for the protection of the interests of the allottee. The superintendent of the Osage Agency or the Secretary of the Interior, whenever he deems the same necessary, may investigate the conduct of executors, administrators, and guardians or other persons having in charge the estate of any deceased allottee or of minors or persons incompetent under the laws of Oklahoma, and whenever he shall be of opinion that the estate is in any manner being dissipated or wasted or is being permitted to deteriorate in value by reason of the negligence, carelessness, or incompetency of the guardian or other person in charge of the estate, the superintendent of the Osage Agency or the Secretary of the Interior or his representative shall have power, and it shall be his duty, to report said matter to the county court and take the necessary steps to have such case fully investigated, and also to prosecute any remedy, either civil or criminal, as the exigencies of the case and the preservation and protection of the interests of the allottee or his estate may require, the costs and expenses of the civil proceedings to be a charge upon the estate of the allottee or upon the executor, administrator, guardian, or other person in charge of the estate of the allottee and his surety, as the county court shall determine. Every bond of the executor, administrator, guardian, or other person in charge of the estate of any Osage allottee shall be subject to the provisions of this section and shall contain therein a reference hereto: Provided, that no guardian shall be appointed for a minor whose parents are living, unless the estate of said minor is being wasted or misused by such parents. * * *"

By this act it was intended to confer jurisdiction on the county court of Osage county over the estate of allottee minor Indians, where such allottee is a minor orphan, and the property of deceased, insane, or other incompetent allottee of the Osage Tribe of Indians. Minority is not incompetency within the meaning of the act, but merely a disability. The precise question presented by this record is this:

"Does the act of Congress of April 18, 1912, confer upon the county court of Osage

county jurisdiction to appoint a guardian for the estate of an Osage minor Indian where both parents are living?"

The petitioner in this case relies upon the "proviso" contained in the last act referred to:

"Provided, that no guardian shall be appointed for a member whose parents are living, unless the estate of said minor is being wasted or misused by said parents."

It is observed, by reading the act, that nothing is contained in the body thereof which confers jurisdiction upon the county court to appoint a guardian in such cases, except as contained in the proviso. In the case of Joplin Supply Co. v. C. C. Smith, 182 Mo. App. 212, 167 S. W. 649, it is said:

"The purpose of a proviso in a statute is not to create new rights or make new laws or take away old ones already existing or repeal a part of an existing substantive law; but merely to restrict the preceding portion of the statute of which it forms a part."

In the case of In re Application of Henry M. Day et al. for Admission to the Bar, 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519, it is said:

"It is not the legitimate office of a proviso to enlarge the enactment to which it is appended."

In the case of State v. Young, 74 Or. 399, 145 Pac. 647, it is said:

"The office of a 'proviso' is to limit or restrain the preceding enactments, and it cannot be held to enlarge such enactments."

In the body of the opinion in the case of State v. Collins, 94 Wash. 310, 162 Pac. 556, it is said:

"A constitutional or statutory provision is a restraint or limitation upon, and not an addition to, that which precedes it."

In the case of Trimmer, Treasurer of Garvin County, v. State ex rel. Rennie, 43 Okla. 152, 141 Pac. 784, it is said:

"The proviso of a statute is a clause which generally contains a condition that a certain thing shall, or shall not, be done in order that something in another clause shall take effect. It implies a condition and defeats the operation of the antecedent clause conditionally."

To the same effect is the holding by this court in the case of Board of County Commissioners of Noble County v. Whitney, 73 Okla. 160, 175 Pac. 112.

The office of a "proviso" in an act does not create a new right, nor does it destroy existing rights at the time of its adoption, and there being nothing in the act of April,

1912, which provides for the appointment of a guardian of the property of Osage minor Indians where the parents are living, except that which is contained in the "proviso," the Allotment Act which confers upon the parents the control and use of the minors' lands, together with the proceeds of the same, until said minors arrive at their majority, and which authorizes the interest payments to be made to the parents, but which contains a supervisory control over the same by the Commissioner of Indian Affairs, applies.

Having reached this conclusion, we must hold that there was no error by the trial court in dismissing the petition, and accordingly its ruling thereon is in all respects affirmed.

By the Court: It is so ordered.