## McDOUGAL et al. v. BLACK PANTHER OIL & GAS CO. et al. JACKSON v. SAME. McKINNEY v. SAME.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1921.)

Nos. 5573, 5574, 5580.

1. **Judgment ⬳638—In case of action in courts of concurrent jurisdiction first final judgment is conclusive.**

   Where two actions between the same parties involving the same cause of action proceed at the same time in courts of concurrent jurisdiction, it is not the final judgment in the action first brought, but the first final judgment, although that may be in the action last brought, that renders the issues res judicata in both actions.

2. **Judgment ⬳829(1)—Judgment of federal District Court, determining heirs of deceased Indian allottee, conclusive, notwithstanding act giving Oklahoma probate courts authority to determine such question.**

   Notwithstanding Act June 14, 1918 (U. S. Comp. St. Ann. Supp. §§ 4234a, 4234b), respectively declaring a determination as to who are the heirs of a deceased allottee of the Five Civilized Tribes by the probate court of the state of Oklahoma having jurisdiction to settle the estate of the said deceased shall be conclusive, provided that an appeal may be taken, etc., and that the lands of full bloods shall be subject to the laws of Oklahoma providing for partition of real estate, the probate court is not given any exclusive right of determination, and there being no repeal, express or implied, of the statutes giving the federal District Court authority to determine such question, a judgment of the District Court de-

termining question of heirship will not be set aside on the theory that the probate court had exclusive jurisdiction; the purpose of the statute being to provide a tribunal which could determine the question of heirship as against persons not parties—that is, against the entire world.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Frank A. Youmans, Judge.

Bill by the United States against Bessie Wildcat and others. The Black Panther Oil & Gas Company and others, Saber Jackson, D. A. McDougal and others, and W. E. McKinney, guardian of Martha Jackson, intervened. The suit was decided against the United States, and continued in separate suits by interveners against the original defendants. From decrees for defendants, the several interveners appealed. Wiley Knight, a party to the suits below, moved that the appeals be remanded, with instructions to the lower court to vacate its findings and final decrees, and hold funds in its control until the county court had made a final decree adjudicating who were the heirs of the original deceased Indian allottee. Motion denied.

Eugene B. Smith, of Sapulpa, Okl., and Archibald Bonds, of Muskogee, Okl., for the motion.

Charles B. Stuart, of Oklahoma City, Okl., and Joseph C. Stone, of Muskogee, Okl., for respondent Black Panther Oil & Gas Co.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge. In the year 1914 the United States brought this suit against those who it alleged were claimants as or under the full-blood Indian heirs of Barney Thlocco, a deceased full-blood Creek Indian, to whom or to the heirs of whom the lands in question in this case had been duly allotted, patented, and conveyed with the approval of the Secretary of the Interior prior to 1904, for the purpose of having such allotment, patent, and conveyance avoided. Many claimants as or under these heirs to the title to this land, and to the oil and gas derived from it, became parties to the suit, either as defendants or interveners. The Black Panther Oil & Gas Company had an oil and gas lease under a claimant to this heirship who proved to be successful, and has been operating under that lease and under the direction of the court upon and in this land, and paying the royalties to a receiver and to the court below.

In May, 1915, that court rendered a decree upon the merits against the United States, which was ultimately affirmed by the Supreme Court, and a decree of its dismissal from this suit, based upon the mandate of the Supreme Court, was rendered in the District Court below in February, 1918. By that time the amounts received from the royalties under the control and subject to the disposition of the court below aggregated more than $1,000,000, and that court proceeded to hear and adjudge the claims to this fund and to the land of the defendants and interveners. The hearing of these issues was commenced in December, 1918, and final decrees adjudging the rights of the respective parties were rendered in 1919, and have been brought to this court for review by the appeals of several claimants.

Wiley Knight, a party to the suit below, has made a motion in the appeals above entitled that the cause presented by these appeals be remanded to the court below, with instructions to vacate its findings and final decrees and hold the funds in its control until the county court of Okfuskee county, Okl., has made a final decree who the heirs of Barney Thlocco were, or with instructions to dismiss the cause below outright.

Counsel for Mr. Knight found this motion upon the Act of Congress of June 14, 1918, 40 Stat. 606, U. S. Comp. St. Supp. 1919, §§ 4234a and 4234b, which provide that:

Section 4234a: "A determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the state of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said state for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question: Provided, that an appeal may be taken in the manner and to the court provided by law, in cases of appeal in probate matters generally: Provided further, that where the time limited by the laws of said state for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said courts, a petition may be filed therein having for its object a determination of such heirship and the case shall proceed in all respects as if administration proceedings upon other proper grounds had been regularly begun, but this proviso shall not be construed to reopen the question of the determination of an heirship already ascertained by competent legal authority under existing laws.   *   *   *"

Section 4234b: "The lands of full-blood members of any of the Five Civilized Tribes are hereby made subject to the laws of the state of Oklahoma, providing for the partition of real estate.   *   *   *"

The contention of Mr. Knight's counsel is that, as the answer to the question who were the heirs of Thlocco necessarily conditions the rights of each of the claimants in this suit, the court below had no jurisdiction, after the passage of the act which has been recited, to adjudge their claims or rights, or to render the decrees below by which it determined them. In support of this position they have cited, and the court has read and considered, the opinions of the courts in Hallowell v. Commons, 239 U. S. 506, 507, 508, 36 Sup. Ct. 202, 60 L. Ed. 409; Pel-Ata-Yakot v. United States (D. C.) 188 Fed. 387, 389; Parr v. Colfax, 197 Fed. 302, 304, 117 C. C. A. 48; McKay v. Kalyton, 204 U. S. 466, 467, 469, 27 Sup. Ct. 346, 51 L. Ed. 566; Ross v. Stewart, 227 U. S. 532, 537, 33 Sup. Ct. 345, 57 L. Ed. 626; United States v. Kagama, 118 U. S. 375;[1] Caesar v. Krow (Okl.) 176 Pac. 927, 928—and in other cases, including State v. Huser, 76 Okl. 130, 184 Pac. 113, 122, 124, and State v. Wilcox, 75 Okl. 158, 182 Pac. 673, cited by opposing counsel.

All parties to this suit claim under the heirs of Barney Thlocco and concede: (1) That all the claimants derive their rights from full-blood restricted heirs of a deceased citizen allottee of one of the Five Civilized Tribes; (2) that an answer to the question who were the heirs of Thlocco was indispensable to the just adjudication of the claims of the parties to the suit; (3) that the jurisdiction to adjudge the answer

[1] 6 Sup. Ct. 1109, 30 L. Ed. 228.

to that question was in terms granted to the probate court, the county court of Okfuskee county, by the Act of June 14, 1918; and (4) that the court below had plenary jurisdiction and dominion of the subject-matter and the parties to the suit below, and lawful authority to adjudicate all questions in that suit including the answer to the question who were the restricted heirs of Thlocco until the act of June 14, 1918, was passed. But counsel argue that when that act took effect the exclusive jurisdiction to hear and decide that question was vested in the probate court of Okfuskee county, and that all jurisdiction and power of the court below to determine it was revoked and ceased. In support of this contention they seem to place their chief reliance upon the decisions in Hallowell v. Commons, 239 U. S. 506, 507, 508, 36 Sup. Ct. 202, 60 L. Ed. 409, Pel-Ata-Yakot v. United States (D. C.) 188 Fed. 387, 389, and Parn v. Colfax, 197 Fed. 302, 304, 117 C. C. A. 48, to the effect that the Act of Congress of June 25, 1910, 36 Stat. 855, granted to the Secretary of the Interior the exclusive jurisdiction to adjudge who were the legal heirs of a deceased intestate Indian allottee, and thereby deprived the courts from that time of the power to adjudge that question either in cases then pending or subsequently commenced. But the Act of June 14, 1918, radically differs from that of June 25, 1910, and at first blush does not seem to do more than to give to the probate courts therein mentioned jurisdiction concurrent with the federal and state district courts of the question who were the restricted heirs of the respective deceased allottees described in the act.

[1] It is the established and familiar rule that where two actions between the same parties, involving the same cause of action, proceed at the same time in courts of concurrent jurisdiction, it is not the final judgment in the action first brought, but the first final judgment, although it may be in the action last brought, that renders the issues res adjudicata in both actions. Boatmen's Bank v. Fritzlen (8th C. C. A.) 135 Fed. 650, 657, 68 C. C. A. 288; Insurance Co. v. Harris, 97 U. S. 331, 336, 24 L. Ed. 959.

[2] Let us compare the acts of 1910 and 1918 with this rule of law in mind. The Act of June 25, 1910 (Comp. St. § 4226), reads that "the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent [the decedent described in the act], and his decision thereon shall be final and conclusive," and there it stops without making any exception, granting any right of appeal, or in any way limiting or modifying the exclusive and absolute power conferred and duty imposed on the Secretary to determine the question. Not so is the Act of June 14, 1918, or its grant. It declares that "a determination of the question of fact as to who are the heirs" of the decedent described therein "by the probate court of the state of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said state for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question: Provided, that an appeal may be taken in the manner and to the court provided by law, in cases of appeal in probate matters generally." Comp. St. Ann. Supp. 1919, § 4234a. Note that if no appeal is taken the de-

termination of the probate court of the question of heirship has the same effect, no greater, no less, than the determination of that question by a federal or state court had, if no appeal were taken, upon the parties to an action in that court. It is conclusive upon them in that court and elsewhere. In other words, Congress, by the Act of June 14, 1918, was sedulous to give by apt words the same effect to the determination by the proabte court of the question of heirship treated by that act that the determination of that question by the federal and state district courts theretofore having jurisdiction thereof had under the general rule of law.

Again, the Act of June 25, 1910, not only conferred the power, but it imposed the duty, upon the Secretary to hear and decide who were the heirs of each decedent named therein, its command was the Secretary "shall ascertain the legal heirs of such decedent and his decision thereon shall be final and conclusive," and that command was an injunction against the subsequent effectual determination of such heirs by any other tribunal. On the other hand, the Act of June 14, 1918, contains no command to the probate courts to ascertain the restricted heirs of the decedents described in the act and no injunction against their ascertainment and determination by other tribunals which had jurisdiction of that issue. Moreover, the Act of June 25, 1910, declared the determination of the Secretary final and conclusive in each case. It made no exception and provided no method of review. But the Act of June 14, 1918, excepts from the jurisdiction of the probate court "an heirship already ascertained by competent legal authority under existing laws," declares that "the lands of full-blood members of any of the Five Civilized Tribes are hereby made subject to the laws of the state of Oklahoma, providing for the partition of real estate"— laws which confer jurisdiction of such partition upon the district courts of that state—and declares that the determination of the probate court shall be conclusive, not final, and allows an appeal from every such determination to the proper district court of the state. When all the terms and provisions of the act are read together and given their proper effect, it is in legal effect a simple provision that, if the proper court having probate jurisdiction determines who the restricted heirs of one of the deceased allottees described in that act are, after the notices have been given and the proceedings have been taken as prescribed therein, and if that heirship had not been already determined by legal authority under existing laws, and if no appeal is taken from the probate court's determination, but not otherwise, it shall be conclusive.

And if a broader view be taken, if the situation of the restricted heirs at the time of the passage of the act and the practical operation thereof be considered, one cannot fail to see that the effect of it must be, and that the purpose of it doubtless was, to open another and a more facile, convenient, and comprehensive avenue of approach to a final and conclusive adjudication of the question it treats by the federal and state district courts by means of the probate proceedings authorized in the act against all the world and by the appeals from the decisions of the probate court to the federal and state district courts.

In State v. Huser, 76 Okl. 130, 184 Pac. 122, 124, Judge Rainey in

an exhaustive, instructive, and convincing opinion, has pointed out that when this Act of June 14, 1918, was passed, while the federal and state district courts had jurisdiction to adjudge who were the heirs of the decedents described in the act as between the parties to the suits in those courts, their judgments and decrees failed to estop claimants to heirship who were not parties to such suits, that in many cases there was no judicial method by which an adjudication of the question who were the restricted heirs of such a decedent as is described in the act could be had which would be conclusive against all the world, and that the purpose and effect of the act were, not to deprive the courts which prior thereto had jurisdiction to adjudge this question between the parties to the suits in those courts, but so to supplement their jurisdiction that decrees determining who were the only heirs of decedents described in the act might be obtained which would quiet titles under them and be conclusive against all the world. Reference is made to that opinion for a more extended statement and a more persuasive argument to this effect.

The radical difference between the objects and terms of the Act of June 25, 1910, upon which the decisions in Hallowell v. Commons, 239 U. S. 506, 507, 508, 36 Sup. Ct. 202, 60 L. Ed. 409, Pel-Ata-Yakot v. United States (D. C.) 188 Fed. 387, 389, and Parr v. Colfax, 197 Fed. 302, 304, 117 C. C. A. 48, are based, and the objects and terms of the Act of June 14, 1918, deprive the opinions in those cases of persuasive, much more of controlling, authority in the consideration of the proper construction and effect of the latter act.

There is no express repeal, nor is there any indication in the Act of June 14, 1918, that Congress intended thereby to repeal or to terminate the effect of the laws which gave jurisdiction to the federal and state district courts to ascertain who were the restricted heirs of the decedents described in that act, and such a repeal or termination thereby may not be presumed and ought not to be implied. A contruction of this act that by it Congress intended to vest and did vest only concurrent jurisdiction in the probate courts of Oklahoma with the jurisdiction already vested in the federal and state district courts is consonant with all the terms of the act with the demands of the time and the situation under which it was passed with reason and authority. And the result is that a deliberate consideration of the jurisdiction of the federal and state district courts to determine who were the restricted heirs of the decedents described in the Act of June 14, 1918, prior to the time of its passage, of the uncertain and doubtful condition of titles and rights of such heirs and of those claiming under them, of the evil at which it was aimed, of the purpose of its enactment, of the carefully guarded and limited terms of its grant of jurisdiction to the probate courts, of the exceptions from that grant, of the fact that all the decisions of those courts under it were made reviewable by the federal and state district courts, and of the general scope and tenor of this legislation, have left no doubt that it was not the intention of Congress by that act, nor was it the legal effect thereof, to deprive the federal or state courts of the jurisdiction vested in them before its passage to adjudge who were the restricted heirs of the decedents de-

scribed in that act, or to vest exclusive jurisdiction of that question in the probate courts therein mentioned, but that the intention of Congress was, and the effect of the act was and is, to grant to the probate courts concurrent jurisdiction with the federal and the state courts to ascertain and adjudge the question of which it treats.

Since no proceedings have ever been had in the probate court of the state of Oklahoma to ascertain, and no determination has ever been made by any such court, who were or are the restricted heirs of Barney Thlocco, and since that question has long since been adjudged by the final decrees of the court below, there is no logical or reasonable way of escape from the conclusion that that court had full jurisdiction to hear and adjudge that question of heirship, and that this court has had and still has jurisdiction to review that adjudication. The motions of Mr. Knight to dismiss these appeals and to remand the cause in which they were taken to the court below, with directions to vacate its findings and decrees therein, and to hold the funds in its control until the probate court of Okfuskee county, Okl., determines who the restricted heirs of Thlocco were, or to dismiss the cause outright, must therefore be and they are in all things denied, with costs against Mr. Knight.