## SWAIN v. HILDEBRAND.

No. 21714.    May 22, 1934.

Rehearing Denied Sept. 11, 1934.

Application for Leave to File Second Petition for Rehearing Denied Oct. 23, 1934.

H. P. White and Joseph D. Mitchell, for plaintiff in error.

Welcome D. Pierson, for defendant in error.

WELCH, J. This action involves one-fourth of the Osage headrights of Amos Swain, deceased Osage Indian, who died in June, 1907. The particular one-fourth of the headright now in controversy was by the Secretary of the Interior awarded to the defendant and all income accruing thereafter to such interest was paid to the defendant. The plaintiff in this action seeks to recover from the defendant all sums so awarded and paid him.

The material facts are that Amos Swain was born as the illegitimate son of Rosa Hildebrand in June, 1906; about three weeks later the plaintiff and Rosa Hildebrand were married, and in the enrollment of the child he was given the name of Swain. Thereafter, in June, 1907, Amos Swain died, and thereafter, in May, 1909, his mother Rosa Hildebrand Swain died. Thereafter, in 1910, pursuant to notice and hearing participated in by the parties to this action, the Secretary of the Interior determined the heirships involved. He concluded from the evidence, which was sharply conflicting and positive on two different theories of the child's paternity, that there was no way to ascertain who was in fact the father of the child, Amos, born as the illegitimate child of Rosa Hildebrand; and that Rosa Hildebrand Swain was the sole heir of Amos Swain, and inherited from him, and at her death owned his full headright; that upon the death of Rosa Hildebrand Swain she left as her heirs, her husband, the plaintiff, and her father, James Hildebrand, defendant, and that they each inherited one-half of the Amos Swain headright.

Continuously since that determination the Secretary of the Interior has paid the income accruing to the Amos Swain headright, one-half to the plaintiff, Henry E. Swain, and one-half to the defendant, James Hildebrand.

The plaintiff contended in the trial court that when Amos Swain died, one-half of his estate went to him as the father, the other half to Rosa, the mother, and that upon the death of Rosa, the mother, the one-half interest she then owned was inherited in equal shares by her father, James E. Hildebrand, and her husband, Henry E. Swain, and that therefore he, the said plaintiff, actually inherited and owned three-fourths of the Amos Swain estate, and the defendant owned the remaining one-fourth, and that the defendant never had any right to a one-half interest in the Amos Swain headright, but only owned a one-fourth interest therein, and that therefore any payments made to the defendant by the United States government in excess of one-fourth of the Amos Swain headright were, to the extent of such excess, unlawfully received by the defendant, and that therefore he should account to the plaintiff for any such excess.

The record discloses this further fact, that, in 1908, the county court of Osage county appointed an administrator of the estate of Amos Swain, and in September, 1908, upon application of Henry E. Swain for distribution, that court entered an order determining the legal heirs of Amos Swain, and thereafter, in August, 1909, that court entered a final order of distribution; that court finding that the heirs of Amos Swain

were his father, Henry E. Swain, and his mother, Rosa Swain, and that each inherited an undivided one-half interest in his estate.

The first question for our consideration is whether the county court or the Secretary of the Interior had jurisdiction to determine this heirship of this Osage Indian at the times of the above-mentioned determinations.

In this action the trial court found, in substance, that the county court did not have the jurisdiction to administer upon said estate, or determine said heirship; that the Secretary of the Interior, up to and including 1910, did have exclusive jurisdiction to make such determination of heirship in so far as such determination would affect the property and estate involved in this action; and that in this action the trial court was without jurisdiction to grant plaintiff any relief as to this Osage headright, and that the plaintiff, Henry E. Swain, could have no relief except upon application to the Secretary of the Interior to modify and correct his former decision rendered in 1910.

The record shows the determination by the Secretary of the Interior in 1910, with detailed showing as to the evidence heard by him and his finding of fact and conclusion and determination as to the paternity and heirship of Amos Swain. The Secretary found that at former times the plaintiff, Henry E. Swain, had sworn that he was the father of Amos, and had also sworn that he was not the father of Amos, and that likewise another person had formerly sworn that he was the father of Amos, and had also sworn that he was not the father of Amos, and it was upon such conflicting evidence, and the other evidence presented, that the Secretary of the Interior decided that it was impossible to determine who was the father of Amos, and he thereupon concluded that such paternity could not be determined, and that Amos was the illegitimate child of his mother, Rosa, and that upon his death she inherited his entire estate. The decision of the trial court here was to the effect that if such conclusion of the Secretary of the Interior was erroneous, it could not be corrected by the trial court in this case, but must be presented to the Secretary upon application to reconsider the matter and make the determination anew.

A determination of these conflicting contentions as to the jurisdiction of the county court and the Secretary of the Interior requires some review of the legislative enactments in reference thereto. The exact matter appears not to have been passed upon by this court heretofore.

It is conceded that covering the period of time under consideration there was no act of Congress specifically granting to the county courts of Oklahoma the jurisdiction and authority to determine heirships such as the one here involved, and that there was no such enactment specifically denying such jurisdiction to the county courts, and that there was no such act in specific terms granting such jurisdiction to the Secretary of the Interior.

The Allotment Act of June 28, 1906, being the General Allotment Act for the Osage Indians (chap. 3572, 34 Stat. at L. 539), provided in substance, for the making of the final roll of the Osage Indians, for the allotment to each member of the tribe of his portion of the land of the tribe, and for the holding in trust by the United States government of certain moneys of the tribe, and all of the oil, gas, coal, and othre minerals lying in and under the lands of the tribe, and the proceeds of the development and sale of such oil and mineral resources; all such moneys to be held to the credit of the tribe and the individual members thereof, and the income to be paid to the individual members of the tribe in quarterly payments. It is stated that the final roll contained 2,229 names, and the interest of each individual in these funds came to be called and known as a "headright."

The act provided that, in case of the death of any one of the Indians, sums thereafter accruing to his interest in the fund or to his headright should be paid to his heirs according to the laws of the territory of Oklahoma, without, however, stating specifically who should determine the names of the persons entitled to be recognized as heirs. That act, however, did give complete authority to the Secretary of the Interior to do and perform all things necessary to carry out the terms and provisions of the act as to the distribution and payment of these Osage funds. It is conceded that no other act of Congress deals with the determination of heirship such as the one here involved covering the periods of time including the determination herein referred to.

Under this act, then, the Secretary of the Interior found himself charged with the duty of making quarterly payments to living members of the Osage Tribe, and, in case of the death of any one of them, to make such payments to his heirs. Upon the death of one of the members of the tribe, it was the duty

of the Secretary to make quarterly payments to some person or persons, and the duty was enjoined upon him to make such payments, not to just any person, but to make them to the persons entitled to receive them, that is, to the heirs of the deceased Indian according to the terms and provisions of the Oklahoma Territory laws. He could make no payment without some determination, and Congress had not authorized any court to determine that heirship for him. He must have reasoned that he should not make such a determination arbitrarily or by guesswork, but that he should conduct a hearing and should thereupon adopt the policy of conducting such a hearing after notice to all interested parties, and with ample opportunity to all parties to attend such hearing and present evidence. That plan was followed in this case, and, after notice, both of the parties to this action attended this hearing, both testified and offered such other evidence as they desired, and it was upon this hearing that the Secretary made the determination in 1910, above referred to.

The county courts of Oklahoma derive their authority and jurisdiction generally from the Constitution and statutory laws of Oklahoma. They have jurisdiction generally to administer upon the estates of all persons, and as an incident to such administration of such estates to distribute such estates to the persons entitled thereto, and to determine the names of such persons by determining the legal heirs of the decedent. However, upon the advent of statehood our Constitution contained the express provision, to wit:

"The people inhabiting the state do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe, or nation; and that until the title to any such public land shall have been extinguished by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control of the United States." Constitution of Okla., art. 1, section 3.

This provision of the Constitution was included therein in order to comply with the provisions of the Enabling Act found in the third paragraph of section 3 thereof, which, in so far as applicable here, provided:

"That the people inhabiting said proposed state do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe, or nation; and that until the title to any such public land shall have been extinguished by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control of the United States."

The state of Oklahoma had made no attempt to legislate contrary to these provisions of the Enabling Act and the Constitution. This court has consistently held since statehood that in reference to the enrolled members by blood of the Indian Tribe, and in reference to their restricted property, Congress had the exclusive authority to legislate with reference thereto, and that in reference to their restricted lands and funds held in trust or held by the United States government, the state courts had only such authority and jurisdiction in reference thereto as was given and granted to such courts by virtue of or in strict accord with some enactment of Congress.

Thus it has been held that the restricted lands of an Indian are not subject to administration. Cowokochee v. Chapman, 90 Okla. 121, 215 P. 759; Barnard v. Bilby, 68 Okla. 63, 171 P. 444. And that prior to specific enactment of Congress, the state courts had no authority to determine heirs, in so far as it would affect restricted property during the trust period. Gray v. McKnight, 75 Okla. 268, 183 P. 489: Caesar v. Krow, 71 Okla. 233, 176 P. 927. And that the income accruing to an Osage headright cannot be sold and transferred by an Osage Indian by blood, because there is no specific congressional authority therefor. De Noya v. Arrington, 163 Okla. 44, 20 P. (2d) 563; Taylor v. Tayrien, 51 F. (2d) 884 (C. C. A.); In re Denison (D. C.) 38 F. (2d) 662. And that such headright does not pass to the trustee in bankruptcy. Taylor v. Tayrien, supra: In re Denison, supra; Taylor v. Irwin (C. C. A.) 60 F. (2d) 495.

And that after death the income accruing to an Osage headright does not become assets of the estate subject to administration. De Noya v. Arrington, 163 Okla. 44, 20 P. (2d) 563.

And that the Osage headright of an Indian by blood is not subject to judicial process. Taylor v. Tayrien, supra; In re Denison, supra; Brenner v. Musgrove, 168 Okla. 247, 32 P. (2d) 740.

The opinions of this court in Davidson v. Roberson, 92 Okla. 161, 218 P. 878 and Spicer v. Coon, 110 Okla. 233, 238 P. 833, are not directly in point, but the reasoning of the court in these opinions is both interesting and instructive here. See, also,

State ex rel. Miller v. Huser, 76 Okla. 130, 184 P. 113.

In Williams v. Hewitt, 74 Okla. 283, 181 P. 286, this court held that there was nothing in the Osage Allotment Act of 1906 conferring probate jurisdiction on the county courts of this state, and that the subsequent act of 1912 only operated to confer authority and jurisdiction on such courts to the extent therein expressly provided, thus recognizing the exclusive control of these Indian matters to be in the federal government.

We conclude and hold that the property of Amos Swain, being his allotted land as a member of the Osage Tribe, and his interest in the trust fund then (and yet) being administered by the Secretary of the Interior, pursuant to the act of Congress, was not subject to administration by the county courts of Oklahoma, and that, in respect to said property, or in so far as it affected such property, the county court of Osage county had no jurisdiction in 1908 or 1909 to determine the heirship of Amos Swain, for the reason that Congress had not so authorized, and without such congressional authority the Constitution and laws of Oklahoma could not confer such jurisdiction.

We conclude and hold, further, that after the death of Amos Swain it was the express duty of the Secretary of the Interior to pay to the heirs of Amos Swain the income accruing to his headright, and that it was within the authority and power of the Secretary of the Interior, in 1910, to ascertain and determine the names of the heirs and the portion of the payments or the estate which each should receive. No good reason is shown why he should not have that authority, and the authority to thereafter make payments to the heirs in keeping with his determination, nor is there shown any reason why the Secretary of the Interior could not have reconsidered such matter, and after notice and hearing, corrected any error in his former determination, and thereafter have made payments according to such corrected determination.

In Lane, Secretary of the Interior, v. United States ex rel. Mickadiet, 241 U. S. 201, 60 L. Ed. 956, it was sought by mandamus to require the Secretary of the Interior to adhere to a former determination of heirship made by him. The Supreme Court of the United States held that the Secretary might reopen the matter or rehear the matter, and that the court could not control his administrative actions by writ of mandamus. The particular enactment under which the Secretary had formerly determined the heirship provided that his determination should be final and conclusive, but, notwithstanding that provision, the Supreme Court recognized his right to reconsider the matter, free from interference or control by the court.

That case is not directly in point here, because the particular enactment mentioned is not applicable in this case, but the reasoning of that case supports the conclusion of the trial court in this case that the Secretary of the Interior might have reconsidered the question of the heirship of Amos Swain, and the exclusive jurisdiction was with him up to and including 1910. See, also, McKay v. Kalyton, 204 U. S. 458; 51 L. Ed. 566; Parr v. United States, 153 F. 462; Bond v. United States, 181 F. 613.

The Secretary of the Interior having proceeded in this matter pursuant to the authority of the act of Congress, and Congress having the sole authority to legislate with reference thereto, no state court, either county or district, can review or annul or undertake to correct any such action of the Secretary of the Interior. The trial court was therefore correct in the conclusion that the district court was without jurisdiction to grant plaintiff the relief sought.

It is well pointed out in defendant's brief that if plaintiff were otherwise entitled to the relief sought, yet the same could not be granted in this action, because the Secretary of the Interior is not a party to the action, and would be in no wise bound by the judgment rendered, but further discussion of that point is not necessary.

It is to be noted that, in 1912 (37 Stat. 86) the Congress, by specific enactment, vested certain probate jurisdiction in the county courts of Oklahoma, in reference to Osage Indians and their estates, and since that time such jurisdiction and authority has been exercised. That act, however, does not apply here, as these questions of jurisdiction and authority arose and were acted upon all prior to 1912.

For the reasons stated, the judgment of the trial court is in all things affirmed.

RILEY, C. J., and SWINDALL, McNEILL, and BAYLESS, JJ., concur.